480 So.2d 826 (1985)
STATE of Louisiana, Appellee,
v.
Gregory OWENS, Appellant.
No. 17285-KA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1985.
Rehearing Denied January 10, 1986.
*828 Kidd & Kidd by Paul Henry Kidd, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James Allan Norris, Jr., Dist. Atty., Earl Cox, Asst. Dist. Atty., Monroe, for appellee.
Before JASPER E. JONES, SEXTON and LINDSAY, JJ.
JASPER E. JONES, Judge.
Defendant, Gregory Owens, was charged by grand jury indictment with aggravated rape and aggravated burglary in violation of LSA-R.S. 14:42 and LSA-R.S. 14:60. Defendant filed a pretrial motion to suppress: "Certain items of clothing, footwear and a kitchen knife, as well as other items seized and sought to be used against the defendant, including certain exculpatory statements allegedly made by defendant and certain blood and saliva samples obtained from the defendant." After an evidentiary hearing, the trial judge denied the motion. A jury found defendant guilty of simple burglary. LSA-R.S. 14:62. The jury was deadlocked on the aggravated rape charge and a mistrial was declared. He was sentenced to serve seven years at hard labor. Defendant appeals contending the trial court erred in denying his motion to suppress evidence alleged to be the fruit of a warrantless nonconsensual search. We affirm.
At approximately 3:30 a.m. on May 26, 1983, an aggravated rape and aggravated burglary were reported to the Monroe Police Department as having occurred at 1943 Samuel Street in Monroe, La. Deputy Mike Johnson of the Ouachita Parish Sheriff's Department immediately received a call from the Monroe Police Department requesting assistance in locating the suspect inasmuch as the suspect had fled through the woods and was believed to still be in the area, but outside the city limits. The suspect was described as a black male, approximately 6' to 6'1" tall weighing 170-180 pounds, having short hair and a beard. He was reported to be wearing dark colored pants, and a blue shirt. The report stated the clothes worn by the offender should be wet as he appeared to flee through the woods behind the Samuel Drive residence. The weapon used in the incident was reported to be a dark handled knife with a serrated blade approximately 7" to 8" long.
While in the area searching for the suspect, Johnson received a radio message from his headquarters that it had received a teletype from the Baton Rouge Police Department in reporting an aggravated burglary and aggravated rape which occurred in Baton Rouge. The teletype advised the suspect was James Owens, a black man, who was believed to be en route to his mother's residence in Monroe.[1] Based upon this information, Deputies Johnson and Ronnie Brown proceeded to the residence of James Owens' mother who, upon inquiry, stated she had not seen James for several days.
Upon departing from this residence, Deputy Johnson talked with Deputy Ratcliff by radio. Ratcliff advised Johnson that he had arrested James Owens a few weeks earlier at a residence at 1911 Winnsboro Road on Hwy. 15. Upon receiving this information Deputy Johnson, along with Deputies Ratcliff, Brown, and Hendry, went to the residence at 1911 Winnsboro Road.
Deputies Johnson, Ratcliff, and Hendry approached the front porch of the residence while Deputy Brown and his German shepherd secured the rear of the residence. Deputy Johnson testified that they knocked on the right front door and Gregory Owens opened it. The officers identified themselves and asked Gregory Owens if James Owens was there. Deputies Johnson and Hendry testified that Gregory Owens acknowledged that James Owens was there, and invited the officers into the house.
*829 Gregory Owens led Deputy Johnson through his living room, his bedroom, and through the kitchen (all located on the right side of the house) to the bedroom of James Owens which was located on the left rear side of the house, but connected by a door to the kitchen. Deputies Hendry and Ratcliff secured the left front door. James Owens was found in his bedroom and was advised of the warrant for his arrest in Baton Rouge and was arrested. None of these officers testified that Gregory Owens was advised of the warrant for James Owens at the time they were invited into the house or at any other time before his arrest. Gregory never testified he was told that the officers had a warrant.
As Deputy Johnson was leaving the house with James Owens via the same route which he used when he entered it, he observed a pile of clothing lying in the middle of the floor in the bedroom of Gregory Owens. Johnson testified these articles consisted of a pair of blue pants, a blue shirt, what appeared to be a knife with a long brown handle on it, and a pair of boots. Closer observation revealed that the pants, shirt and boots were soaking wet and the knife had a serrated blade. Upon making these observations Deputy Johnson realized the clothes fit the description of those worn by the Samuel Street, Monroe rapist and burglar and the knife was similar to the one reportedly used in these offenses. Officer Johnson further concluded that Gregory Owens fit the description of the offender given by the Samuel Street victim. Based upon these conclusions Deputy Johnson advised defendant of his rights, arrested the defendant and turned him over to the Monroe Police Department.
Officer William Causey of the Monroe Police Department testified that after he logged the shirt, pants, knife and boots into evidence, he discovered $1.05 in change, three $1.00 bills, a $10.00 bill and a blue Bic lighter in the pockets of the pants. Officer Causey further testified that the victim of the aggravated rape and aggravated burglary reported that she was missing a purse which contained a $10.00 bill, three $1.00 bills, about a dollar in change, and a lighter which, like the lighter recovered from defendant, was low on fuel.
Defendant testified that in the early morning hours of May 26, 1983, he heard a knock on his front door. He opened the door, saw several officers, and asked who they were looking for. The officers then inquired about the presence of James Owens and defendant replied that he was not sure if James was present. Defendant testified that he requested the officers to wait while he determined if James was there. He denied he invited the officers into the house. Defendant then went to James' room, followed by Deputy Johnson, woke James, and the officers placed James under arrest. Defendant proceeded to his uncle's residence next door and asked his uncle to call his mother. Upon returning to his residence, defendant was arrested as a suspect in the aggravated rape and aggravated burglary which occurred in Monroe.
The residence wherein Gregory and James Owens were arrested was described by Deputy Johnson as a duplex, more or less rectangular in shape, with two front entrance doors. The first room on each side is a living room, the second room on each side is a bedroom and the third room on the right hand side is a kitchen. The third room on the left hand side is the bathroom. Gregory was using the bedroom on the right hand side of the house and James was using the bedroom on the left hand side of the house. The residence is owned by the mother of James and Gregory Owens and the two young men are the only inhabitants.
Defendant contends the trial court erred in denying his pretrial motion to suppress. Defendant argues his arrest was the result of a warrantless and unlawful entry into his home by the officers to effect the arrest of his brother, James Owens. In support of this contention defendant cites Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) and Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
*830 In Steagald v. United States, supra, the court held a law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant, absent exigent circumstances or consent. In Payton v. New York, supra, the United States Supreme Court held a warrantless and nonconsensual entry into the home of a suspect to make a routine felony arrest where there existed no exigent circumstances, violated the Fourth Amendment to the United States constitution. The defendant contends the items seized and statements taken should be suppressed as fruit of the poison tree. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In the instant case, the officers did not have an arrest or search warrant. Therefore, their presence in defendant's home was contrary to the fourth amendment unless based upon defendant's consent. The defendant's fourth amendment right to privacy can be waived by his voluntary consent to permit the officers in his home. Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477; Payton v. New York, supra; Steagald v. United States, supra.
The trial judge, in his written reasons for denying defendant's motion to suppress, specifically found that defendant consented to the officer's entry into the residence.
Defendant contends any consent purportedly obtained was the product of false pretenses, coercion, and illegal detention. Defendant argues that his consent was not freely and voluntarily given because he was not informed of his right to refuse to allow the officers to enter, he had consumed beer, whiskey, and marijuana earlier that day, and he was intimidated by the number of officers, one with his gun drawn, which appeared on his doorstep during the early morning hours. We disagree.
A valid consent search is a well recognized exception to the warrant requirement, but the burden is upon the state to prove by clear and convincing evidence the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial judge under the facts and circumstances of each case. These factual determinations are to be given great weight on appellate review. State v. Edwards, 434 So.2d 395 (La.1983); State v. Smith, 433 So.2d 688 (La.1983). Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Bodley, 394 So.2d 584 (La. 1981).
In the present case, defendant lived in the residence at 1911 Winnsboro Road with his brother, James Owens. Defendant, therefore, had the right to permit the officers to enter the residence and search for James Owens.
Defendant contends any consent purportedly obtained was the product of false pretenses because the officers, upon confronting defendant at his door, indicated they possessed a warrant for the arrest of James Owens. Defendant relies on Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), for the proposition that an arrest or search conducted in reliance of a warrant cannot later be justified on consent if it later develops the warrant was invalid or nonexistent. The rationale of Bumper, supra, is that when a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search.
The record in the instant case does not support defendant's reliance on Bumper, supra. Deputies Johnson and Hendry testified that after defendant responded to their knock on the door, they merely inquired as to the presence of James Owens. Nothing was said about the existence of an arrest warrant. James Owens, on the other hand, testified that he heard one of the officers indicate that he possessed a warrant for his arrest. The defendant who opened the door and invited the officers into the house did not testify that he was *831 told by them they had an arrest warrant for his brother, James. The defendant testified that when he arrived at James' bedroom (no doubt with Officer Johnson close at hand) he put his hand upon James, apparently to awake him, which circumstance leaves no doubt that the officers were in his bedroom before James was told they had a warrant for his arrest. The trial judge was in a better position to assess the credibility of these witnesses and he found the officers merely inquired as to the presence of James Owens when defendant answered their knock. This factual finding is entitled to great weight on appellate review. State v. Smith, supra. This argument lacks merit.
Defendant contends his consent was not given freely and voluntarily because he was not advised of his right to refuse to allow the officers to enter, he had consumed beer, whiskey and marijuana earlier that day, and he was intimidated by the number of officers, one with his gun drawn, which confronted him in the early morning hours.
The voluntariness of consent is to be determined by the trial judge under the facts and circumstances of each case. State v. Edwards, supra. Intoxication and the fact that a person is not warned of his or her right to refuse entry are factors which should be considered in determining the voluntary nature of consent. In our view, the trial judge analyzed properly the totality of the circumstances in this case and determined that defendant's consent to enter had been given freely and voluntarily. A review of the circumstances surrounding the time when the defendant invited the officers into his home requires the observation that the officers had given the defendant no reason to be concerned for his welfare as they specifically asked for his brother, James, and they were not at this point investigating the offense with which Gregory was later associated, nor did the officers otherwise give Gregory any indication that they had any interest in him. The record reflects the defendant's consumption of alcohol and marijuana occurred several hours before the officers appeared at his residence. The record is devoid of evidence of coercion on the part of any of the officers appearing at defendant's residence. There is no taint of any misconduct by the officers prior to the defendant's invitation to the officers to come in to see his brother, James. This argument lacks merit.
Defendant contends his consent to entry was a product of illegal detention. The defendant's testimony establishes that he was not detained prior to his arrest.
He testified that as his brother was being arrested he left his residence and went to his uncle's home next door and instructed his uncle to telephone his mother. These facts support the trial court's finding that his consent was voluntary and not the product of illegal detention.
Defendant contends that if the officers obtained his consent to enter the residence, such consent was limited to locating James Owens. Defendant argues that the officers exceeded the scope of his consent by searching his bedroom. We disagree with this contention as the evidence supports the trial court findings that the items sought to be suppressed were not obtained as a result of a search of defendant's bedroom.
The trial judge, in his written reasons for denying defendant's motion to suppress, specifically found that defendant led the officer through his bedroom en route to the bedroom of James Owens. The trial judge further found that after James Owens had been arrested, the officer was leaving the residence by the same route he entered when he discovered the wet pants, shirt, boots and the knife in plain view in the middle of the floor in defendant's bedroom. Aside from the testimony of James Owens that the officers searched the whole house, there is no evidence the officers searched the bedroom of defendant. Because the factual findings of the trial judge are entitled to great weight on appeal, this argument lacks merit.
The trial court was correct in denying the motion to suppress because the facts of this case justify the application of the plain view exception to the warrant requirement.
The plain view doctrine is an exception to the rule that a search and seizure conducted *832 without a warrant is presumed unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Knowles, 438 So.2d 648 (La.App.2d Cir.1983).
For plain view to apply Coolidge requires (A) a lawful initial intrusion, (B) that the incriminating evidence must be discovered inadvertently, and (C) that it be "immediately apparent" that the item observed is evidence or contraband. The third requirement of plain view as mandated by Coolidge was changed in Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), wherein the court required only that the officer have probable cause to believe that the item observed was evidence or contraband rather than requiring the item observed to be immediately apparent as contraband or evidence. The Brown court stated probable cause to believe the items viewed are evidence or contraband "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief ... that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false. A "practical nontechnical" probability that incriminating evidence is involved is all that is required." See State v. Camp, 459 So.2d 53 (La.App.2d Cir.1984); State v. Huston, 445 So.2d 67 (La.App.2d Cir.1984); State v. Ray, 471 So.2d 831 (La.App.2d Cir.1985); State v. Burns, 471 So.2d 949 (La.App.2d Cir.1985).
The prior justification for the police intrusion into the residence was the consent of the defendant. The evidence was inadvertently discovered when Officer Johnson was leaving the residence by the same route he entered it. Based upon the physical description of the offender, the weapon reportedly used, and description of the clothing worn by the individual who committed the offenses under investigation, Officer Johnson had probable cause to believe the items were contraband or instrumentalities of a crime.
Deputy Johnson testified that the suspect of the Monroe rape and burglary was described as a black male, approximately 6' to 6'1", weighing between 170 and 180 pounds, having short hair and a beard, and wearing dark colored pants and a blue shirt. The presentence report compiled at the direction of the trial judge reveals that defendant is a black male, 6' tall, and weighing 180 pounds.
Deputy Johnson testified that the physical description of the suspect of the Monroe rape and burglary, coupled with his observation of wet clothing and what appeared to be a knife under the clothing in defendant's bedroom, prompted him to question and subsequently arrest defendant. Deputy Johnson was in the house with the consent of the defendant, he observed the evidence as he walked through the bedroom, and he had probable cause to believe the items were evidence. The plain view exception to the warrant requirement is applicable.
The entry of defendant's home and the seizure of the clothing and knife from defendant's bedroom did not infringe upon defendant's constitutional rights to be free from unreasonable searches and seizures. The trial court was correct in denying defendant's motion to suppress and the conviction and sentence are AFFIRMED.
NOTES
[1] Deputy Johnson testified that he believed an arrest warrant had been issued for James Owens based on the radio message concerning the teletype. The Baton Rouge warrant was not issued until about 8:00 a.m. on May 26, 1983, after the arrest of James Owens in Monroe.