HALL, Chief Judge.
Defendant, Gregory Owens, was tried by a jury on charges of aggravated rape in violation of LSA-R.S. 14:42 and aggravated burglary in violation of LSA-R.S. 14:60. Defendant was convicted of simple burglary and a mistrial was declared as to the aggravated rape charge due to the jury’s inability to agree on a verdict. The simple burglary conviction was affirmed on appeal. State v. Owens, 480 So.2d 826 (La.App.2d Cir.1985), writ denied, 486 So.2d 748 (La.1986). Retrial of the aggravated rape case was set for March 25, 1985. When the case was called for trial, defendant waived his right to a jury trial and agreed that the case would be decided by the trial judge based upon the entire record of the first trial. The trial judge was not the presiding judge at the original jury trial.
On September 10, 1985 defendant was found guilty of forcible rape in violation of LSA-R.S. 14:42.1 and was sentenced on February 21, 1986 to twenty years at hard labor, ten years to be served without benefit of parole, probation, or suspension of sentence. The sentence was ordered to run concurrently with the simple burglary sentence.
Defendant alleges a number of assignments of error, which are consolidated into four assignments in brief.
FACTS:
On May 25, 1983, the victim, a resident of Monroe, returned home from her employment as a nurse’s aide at approximately 11:30 p.m. After talking on the phone and watching television, she went to bed at about 1:50 a.m. She awoke upon feeling something sharp sticking in her side and found a man standing beside her bed. The man was whispering and told the victim not to move or say a word or he would kill her. The man then told the victim to get out of bed and remove her underwear. The victim’s two little girls were asleep in the bed. When the victim got out of the bed she tried to take the knife away from the assailant who said he had another knife and he would kill her if she tried again. The victim again tried to take the knife away from the assailant who repeated he had another knife and would kill her. The victim finally complied with the orders of her assailant and laid on the floor. When she refused to spread her legs, her assailant pulled her legs apart and had forcible vaginal intercourse with her. The victim once again tried to grab the knife away from her assailant who again stated he had another knife and would kill her.
The rape was reported to the police at approximately 3:30 a.m. The victim de *970 scribed the rapist to police as a slender black male somewhere between 6’ and 6’1” tall, 180 pounds, with a beard and wearing long dark pants which were not blue jeans and a light blue shirt tied around his waist. She noticed that his clothes were damp and when he ran out of the house he had soft soled shoes which made no noise. After the victim awakened her brother and sister telling them to call the police, it was discovered that her purse was gone. In her purse she had, among other items, a $10 bill, three $1 bills, and approximately $1.05 in change and a disposable cigarette lighter. These items were later discovered in the defendant’s pockets. A television set was also missing from her home. The television set and the other items in her purse were never recovered. After the defendant’s arrest, his fingerprints were matched to a latent fingerprint taken from one of the screens which had been removed to effect entry into the victim’s home.
A rape kit examination revealed motile sperm from a vaginal wash. Dr. Blackmon treated the victim at the hospital and observed that she was scared and anxious, had superficial mucosal tears at the entrance of the vagina and that her vulva was red and swollen. The Crime Lab report revealed that the victim’s assailant was a secretor in blood group A. The defendant is a secretor in blood group A. Approximately thirty percent of the black population falls into that category. The rape had been reported at approximately 3:30 a.m. on May 26, 1983.
The facts pertaining to the defendant’s arrest later in the early morning of the same day are detailed in this court’s opinion in the previous appeal of the burglary conviction.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant urges that the court erred in denying the motion to suppress evidence obtained pursuant to a warrantless search and arrest of the defendant at his residence. This assignment was dealt with in full in the previous opinion and was found to lack merit. Defense counsel argues that the decision in State v. Taylor, 468 So.2d 617 (La.App. 2d Cir.1985) is inconsistent with the holding in Owens. The two cases are factually distinguishable.
The issues presented by this assignment were correctly decided in the previous Owens decision and need not be addressed further here.
This assignment is without merit. ASSIGNMENT OF ERROR NUMBER TWO
Defendant urges that his motion for discovery of police reports pursuant to LSA-R.S. 44:3 A(4) and State v. Shropshire, 471 So.2d 707 (La.1985) was improperly denied. Discovery motions are to be filed pre-trial as required by LSA-C.Cr.P. Arts. 521 and 729:
Art. 521. Time for filing of pretrial motions.
Pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
Art. 729. Time and scope of motion by defendant.
A motion for discovery by a defendant under this Chapter may be filed in accordance with Article 521 or within such reasonable time as the court may permit. The motion shall include all relief sought under this Chapter. A subsequent motion may be considered before trial, but only upon a showing that such motion be in the interest of justice.
The record reflects the Shropshire motion was filed some five months after the case was submitted to the court for decision. Such a discovery motion cannot be considered after trial.
This assignment of error is without merit.
*971 ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that the evidence was insufficient to prove beyond a reasonable doubt all the elements of the crime of forcible rape. Defense counsel points to the fact that the jury in the original trial was deadlocked on this charge and argues that the trial judge could not possibly have found guilt beyond a reasonable doubt.
The victim testified to the circumstances of the rape and her efforts to resist. The medical testimony shows that the victim had been engaged in sexual intercourse within a few hours prior to the examination. The victim testified that the assailant was armed with a knife and that she struggled to take it away from him. Seminal acid phosphatase tests showed that the victim had intercourse with a secretor in blood group A. The defendant is a secretor in blood group A. Although the victim could not identify the defendant as the assailant, the description of the defendant which she gave to police very soon after the assault closely matched the defendant’s. The defendant’s clothes found in his bedroom were wet, as were the assailant’s. She identified the cigarette lighter which was found in the defendant’s clothing as hers by a knifemark which she had placed on it. Also found among defendant’s clothing was a knife which the victim stated was very similar to the one her assailant had used, although she did not believe it to be the same knife. The money in her missing purse matched exactly the money found in the defendant’s clothing at the time of his arrest. Most importantly, the defendant’s fingerprint was found on the window screen removed from the point of entry.
In order to satisfy due process standards, the record evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational juror (fact-finder) to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). LSA-C.Cr.P. Art. 821, added by Act. No. 144 of 1982, tracks the Jackson language in setting up a Louisiana standard pertaining to post-verdict motions for acquittal based upon insufficiency of the evidence.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983). Moreover, the Supreme Court has noted that “although the circumstantial evidence rule [LSA-R.S. 15:438] may not establish a stricter standard of review than the more general reasonable juror’s reasonable doubt formula, it emphasizes the need for careful observation of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of the circumstantial evidence.” State v. Smith, 441 So.2d 739, 741 (La.1983). [Quoting State v. Chism, 436 So.2d 464, 470 (La.1983)].
Using the enunciated standard, when viewed in the light most favorable to the prosecution, a reasonable trier of fact could have found beyond a reasonable doubt that the defendant committed the crime of forcible rape.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error defendant complains the trial by stipulation on the charge of aggravated rape denied him numerous constitutional rights traditionally associated with a public trial, and was tantamount to an involuntary guilty plea.
Defendant was represented by the same experienced defense counsel at the first *972 trial and at the proceedings in which the stipulation was entered, and now on appeal. The record also reflects that defendant was present at all proceedings of the first trial, and at each stage of the subsequent proceedings. Defendant’s right to confrontation and cross-examination of the witnesses against him was fully and expertly exercised at the first trial.
The transcript of the proceeding in which the defendant waived trial by jury and agreed that the case would be decided by the judge on the basis of the evidence adduced in the previous trial shows that the defendant and the judge engaged in a colloquy wherein the judge determined that the defendant knew of, understood, and waived his right to a jury trial, and that the defendant understood the trial was to be based on the transcript of the previous trial, and agreed to trial in that manner.
The stipulation obviously was a strategic decision by defendant and defense counsel since the first jury had been unable to reach a conclusion as to the charge of aggravated rape on the evidence presented. The defendant’s constitutional rights were adequately protected at the first trial, and his subsequent waiver of a jury trial at his retrial did not amount to an involuntary guilty plea.
Alternatively, defense counsel argues that even if defendant voluntarily waived his constitutional rights, a trial entirely by stipulation is unauthorized by law. However, no authority is cited for this proposition and we are unaware of any prohibition against such a procedure. Louisiana courts have consistently upheld stipulations entered into by a defendant and his defense counsel and the state. See State v. Fabacher, 362 So.2d 555 (La.1978); State v. Henry, 352 So.2d 643 (La.1977); State v. Vanderhoff, 415 So.2d 190 (La.1982); and State v. Cazes, 262 La. 202, 263 So.2d 8 (1972).
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.