I, MAR VIN, Chief Judge.
In this appeal by plaintiff, Custom Tanks & Welding, Inc., a north Caddo Parish steel fabricator, we affirm a judgment rejecting plaintiffs demands against the State Police arising out of the seizure in 1985 of a 1960’s model crane or “cherry picker” that state, private and federal investigators suspected had been stolen by a multi-state theft ring in 1981 and sold to plaintiff shortly thereafter by a person who was suspected of being in the theft ring.
PREFACE
Plaintiff cooperated in the investigation and was not and is not suspected of being involved in the theft ring. Plaintiff simply wrote a check for the price of the crane ($18,175) to one Bill Bridges and was given a copy of a 1974 Wyoming certificate of title that bore the purported signature of a person other than Bill Bridges.
Plaintiff instituted this action in 1985 for the wrongful seizure or detention of the crane. After the suit was filed, the state police, not having sufficient evidence to prove its case against the person who sold the crane to plaintiff, offered to return the crane to plaintiff, which was the only person or *644 entity claiming to “own” it. Plaintiff declined the offer.
Plaintiff does not challenge the trial court’s finding that because plaintiff consented to the state police’s search and seizure, negating the constitutional requirement for a warrant, the seizure was not “wrongful.” See State v. Edwards, 434 So.2d 395 (La.1983) and State v. Owens, 480 So.2d 826 (La.App.2d Cir.1985), writ denied, U.S. cert, denied. Instead, plaintiff contends the trial court erred, factually and legally, in basing the finding that the seizure was not “wrongful” on the fact that plaintiff could not produce a Louisiana certificate of title in plaintiffs name as required by LRS Title 32. Plaintiff bases that contention on case law that recognizes the civil code provision that a contract of sale “is ... |2perfect[ed] between the parties ... as soon as there exists an agreement for the object and for the price thereof ...” C.C. art. 2456, before its amendment in 1993; emphasis and brackets supplied. See, for example, Scott v. Continental Insurance Co., 259 So.2d 391 (La.App.2d Cir.1972) and Maloney v. State Farm Insurance Co., 583 So.2d 12 (La.App. 4th Cir.1991), writ denied.
The dispute here is not between the parties to the contract, who are plaintiff and Bridges. Plaintiff has not shown that Bridges owned the crane he “sold” to plaintiff. In these circumstances, we find pertinent, and emphasize, C.C. art. 518:
The ownership of a movable is voluntarily transferred by a contract between the owner and the transferee that purports to transfer the ownership of the movable....
See and compare Wright v. Barnes, 541 So.2d 977 (La.App.2d Cir.1989). Compare C.C. art. 525, which makes the codal provisions on ownership transfer inapplicable “to movables that are required by law to be registered in public records.”
Neither ownership of the crane, nor the necessity for registering the crane with the Louisiana Office of Motor Vehicles, is at issue between the parties to this action. The sole issue is whether the State is liable in damages to plaintiff for the seizure and detention of the crane. We need not decide which law, C.C. art. 518 or LRS Title 32, would govern a dispute over the ownership of the crane, because plaintiff did not produce either the LRS Title 32 vehicle certificate of title or the C.C. art. 518 “contract [with] the owner ... that purports to transfer the ownership of the [crane].”
jyWe detail the facts involved in plaintiffs dilemma:
FACTS
The plaintiff corporation was created in 1979 by two Vivian residents, Lankford and Holbrook. The corporation’s steel fabrication business requires frequent use of a crane at its workplace in Rodessa.
Another Vivian resident, Bill Bridges, “sold” the crane to plaintiff in 1981 for $18,-175. The crane, an Austin Western model from the early 1960s, was then almost 20 years old. Bridges’ asking price was considerably less than the price quoted to plaintiff by others for a used crane. The sole documentary evidence of the sale is plaintiffs canceled check to Bridges for the purchase price. The check is dated April 24,1981, and bears the notation, “F/crane, VIN 1462.” No bill of sale was prepared or signed.
Bridges furnished plaintiff with a copy of a 1974 Wyoming certificate of title for a 1962 Austin Western crane, bearing the vehicle identification number (VIN) 1462. According to the copy of that title certificate, the crane was acquired by a California company, H.C. Smith Construction Co., from Stewart Equipment Co. of South Dakota, on April 1, 1974, and was sold by H.C. Smith Construction Co. to Clive Yarber of Cheyenne, Wyoming, on March 25, 1980. Yarber’s signature on the certificate, in the space designated as an application for a motor vehicle certificate of title, was notarized on April 20, 1981, just a few days before plaintiff acquired the crane from Bridges.
Bridges’ name or signature does not appear anywhere but on the check plaintiff wrote to him. Bridges did not offer, and plaintiff apparently did not request, any additional title document, bill of sale or contract, from Bridges or from anyone else, either before or after April 24,1981.
*645 ¡«¡Plaintiff did not apply for a Louisiana title certificate. Plaintiff’s officers and owners, Lankford and Holbrook, said they considered it unnecessary to register the crane here because the crane was used exclusively at plaintiff’s business premises in rural 'Cad-do Parish, and was not used or intended for use on the highway.
In late 1984, Bridges became a suspect in a multi-state heavy equipment theft ring being investigated by the Louisiana state police, with assistance from the FBI and the National Automobile Theft Bureau. Based on information obtained from at least three individuals, including another suspect in the case and two confidential informants, police reasonably suspected that the crane on plaintiff’s yard had been stolen from a job site in Wyoming and delivered to Bridges in Louisiana about the same time that another piece of heavy equipment, a Caterpillar track hoe, was stolen from Houston, Texas, and delivered to Wyoming.
Custom’s principals, Lankford and Hol-brook, were not suspected of any involvement in the theft ring, or of having any knowledge that the crane Bridges sold to plaintiff may have been stolen.
THE SEARCH
Desiring to inspect the crane for evidence of its identifying serial number, and believing that plaintiff was simply an innocent or unwitting victim of Bridges’ suspected criminal conduct, the investigating officers went to plaintiffs premises on January 25, 1985, about 10:00 a.m. Lankford, but not Hol-brook, was present when the officers arrived. The officers generally informed Lankford of the reason for their investigation and solicited his cooperation.
Lankford confirmed that the crane had been purchased from Bridges, showing the officers his “title papers,” which consisted of plaintiffs canceled check and the copy of the Wyoming title certificate mentioned above. Lankford | sread and signed a consent to search form, authorizing the officers to search the crane and to “remove any items the State Police deem pertinent to their investigation, providing a receipt is furnished for the removed items.”
The search revealed that the vehicle identification number (VIN), sometimes called the product identification number (PIN), had been removed from the crane. The plate in the cabin compartment that normally contains the identifying number was missing. The VIN was also missing from its secondary and less obvious location on the crane, having been cut away with a torch.
With the crane in this condition, the officers were unable to positively match the crane on plaintiffs yard, either with the crane described in the copy of the Wyoming papers, or with the crane that had been reported as stolen in Wyoming. The absence of identifying numbers bolstered the officers’ suspicion that the crane had been stolen, and alerted the officers to an additional potential criminal offense involving the crane: LRS 14:207 makes it unlawful to knowingly possess a motor vehicle from or on which the manufacturer’s number [VIN or PIN] has been removed, defaced or destroyed for the purpose of concealing or misrepresenting its identity. No accusation was or is made that plaintiffs possession was “knowing.”
Holbrook apparently arrived at plaintiff’s office while the search was underway. At about 12:30 p.m., and apparently after the search was completed, Lankford and Hol-brook each signed a handwritten statement describing their dealings with Bridges, including Bridges’ representations to them that the crane “came from a construction job in Wyoming” and that “the [Wyoming] contractor was replacing it with a newer model.” They further stated that they had seen Bridges using the crane in the Vivian area for some time before he sold it to them.
laTHE SEIZURE
Because the above circumstances corroborated what the police had been told about Bridges, the officers informed Lankford and Holbrook that the crane would be seized and secured for further investigation of the alleged theft and of the confirmed VIN removal. The officers made it clear that Lankford and Holbrook were not implicated in or suspected of any wrongdoing.
*646 Lankford asked the officers if the seizure could be delayed for a few days, until plaintiff completed the job for which the crane was then being used. Answering in the negative, the officers seized the crane that day, without a warrant, and had it towed to a storage facility in Shreveport. As stipulated in the consent to search form, the officers gave plaintiff a receipt for the crane and for copies of plaintiffs “title papers,” the canceled cheek and the photocopied Wyoming title certificate. The officers apparently offered to return the crane to plaintiff upon receipt of some additional documentation to match the seized crane with the crane described in plaintiffs “title papers.”
Plaintiffs requests thereafter for additional documentation from Clive Yarber, the last-named owner of the crane on the copy of the Wyoming title certificate, were largely fruitless. Yarber informed plaintiff that the crane’s engine had been replaced when Yar-ber owned the crane. Plaintiff relayed this information to police, who conducted a more detailed search of the crane after it was seized. The state police also obtained from the manufacturer of the crane, a “test card” or list of master parts in the crane that would contain identifying numbers. The master list identifies the specific number on dozens of parts that were originally placed in the crane described in plaintiffs “title papers.” Even allowing for the replacement engine, police were unable to match any of the parts numbers on the master parts list to the parts found in the crane taken from ^plaintiffs premises. The discrepancies in parts numbers also prevented the police from confirming Bridges’ representations to plaintiff that the crane was a 1962 year model.
The police surmised, but were unable to definitively prove, that the crane Bridges sold to plaintiff was stolen, and that it was not the same crane described in plaintiffs title papers. According to the NATB investigator who assisted the police,
The general scenario that a thief would use is that he would obtain paperwork to a legitimate piece of equipment, and with that paperwork he would go out and steal a product that belongs to someone else. Then he would sell the stolen product along with the paperwork from a legitimate product ...
Having insufficient evidence to prove beyond a reasonable doubt that the crane was stolen, and with plaintiff as the only party claiming ownership of the crane, the police ultimately offered to return the crane to plaintiff. Plaintiff declined the offer, believing that the crane had been heavily damaged after it was seized.
Because the use of a crane was essential to its business, plaintiff, immediately after the seizure, rented and later purchased a replacement crane. Lankford and Holbrook testified that the unanticipated costs associated with obtaining the replacement crane reduced plaintiffs profits from jobs under contract at the time of the seizure. Joining the corporation as plaintiffs, Lankford and Holbrook sought damages for their embarrassment and humiliation, and for the alleged violation of their civil rights.
TRIAL COURT FINDINGS
The trial court made these findings:
... Plaintiffs’ initial burden is to establish ... by a preponderance of the evidence ... that the crane was taken without any authority of law. This issue is disposed of in defendant’s favor by the following facts established at trial: (1) the defendant had reliable information indicating that a stolen crane had been sold by Bridges to the plaintiffs; (2) the plaintiffs confirmed | gthat they had purchased the crane from the individual whom defendant suspected had been involved in the theft of the crane; (3) there was no validly identifiable serial number on the equipment, and (4) the plaintiffs could not produce a valid title. The search conducted by Trooper Christian and the other officers was conducted legally after obtaining a valid consent to do so. The crane was not wrongfully seized under the facts presented....
DISCUSSION
For simplicity, we have referred to plaintiffs in the singular and continue to do so. Plaintiffs appeal does not challenge the trial court’s findings, express and implied, *647 that Lankford freely and voluntarily consented to the search, and that he, as plaintiffs president, was authorized to do so on behalf of the corporation. Nor does plaintiff dispute the legal principle that a valid consent to search obviates the constitutional requirement for a search warrant. See State v. Edwards and State v. Owens, both cited supra.
Plaintiffs contention that the trial court erred, both factually and legally, when it found that plaintiff “could not produce a valid title” to the crane, is premised on the assumption that the absence of a Louisiana certificate of title in plaintiffs name was the trial court’s sole basis for finding plaintiffs title infirm. Relying on Scott, Maloney and Wright, all cited supra, plaintiff contends ownership of the crane is to be determined by the civil code provisions dealing with the sale of a movable, and not by the presence or absence of a certificate of title under LRS 32:701 et seq.
As we appreciate the trial court’s ruling, the finding of a deficiency in plaintiffs title was not based solely on the absence of a Louisiana title certificate in plaintiff’s name, but rather on the absence of the name of plaintiffs vendor, Bill Bridges, from even the copy of the documented chain of title. Plaintiff did not buy the crane from Yarber, the last-named owner on the Wyoming title certificate. | pPlaintiffs canceled check to Bridges shows that plaintiff paid Bridges for the crane, which Bridges [apparently mis-] represented as being a 1962 year model bearing the VIN 1462. The canceled check, however, does not prove that Bridges owned the crane that plaintiff purchased. Notwithstanding that Lankford and Holbrook had seen the crane in Bridges’ possession, there is no evidence in this record to show whether, when or in what manner Bridges acquired ownership of the crane he sold to plaintiff.
The civil code provision which plaintiff seeks to apply here expressly provides that the ownership of a movable “is voluntarily transferred by a contract between the owner and the transferee that purports to transfer the ownership of the movable.” Art. 518. This record simply does not suggest or show that Bridges owned the crane he sold to plaintiff.
We do not know who the owner was or is of the crane in question, either before or after April 24, 1981. We do not know the PIN or VIN number of the particular crane before or after 1981. We shall not speculate whether anyone who possesses this 30-plus year old “stolen” crane after this opinion becomes final, does so “knowingly,” contrary to LRS 14:207.
Moreover, and even should we assume arguendo that plaintiff had valid title to the crane, the warrantless search of the crane with Lankford’s consent was nevertheless lawful. See State v. Edwards and State v. Owens, cited supra. The information obtained during the search, namely, that the crane’s serial number or VIN had been removed from both its primary and secondary locations, gave the officers reasonable grounds to seize and secure the crane for their further investigation of Bridges in the multi-state theft ring and of the “source” of the particular crane.
lioBy all accounts, Lankford and Holbrook did not know or have reason to suspect that the crane they bought from Bridges may have been stolen. The search and seizure of the crane undoubtedly upset them and disrupted their corporate business. Even so, however, this record clearly supports the trial court’s conclusion that the crane was not wrongfully searched or seized.
DECREE
At plaintiffs cost, the judgment is AFFIRMED.