J^PLOTKIN, Judge.
Defendant Ronald A. Williams appeals a trial court judgment awarding his former wife, plaintiff Ann Mayrbat Williams, permanent alimony in the amount of $560.50 per month. For the reasons that follow, we amend the trial court judgment awarding Ms. Williams permanent alimony, and remand to the trial court.
Facts
Mr. and Mrs. Williams were married on November 19, 1967. After almost thirty years of marriage, the parties separated in December of 1995. Pursuant to a petition filed on December 19, 1995, Ms. Williams sought a divorce, as well as alimony pendent lite and permanent alimony. The divorce and alimony issues were tried on four separate days over a five-month period in late 1996 and early 1997. At the adjournment of court on the third day of the trial, December 19, 1996, the trial court granted the petition for divorce and awarded Mrs. Williams $500 per month in interim alimony pendente lite. Following the final day of trial, March 18, 1997, the trial court found that Ms. Williams was entitled to $560.50 per |Rmonth alimony pendente lite, that Mr. Williams was at fault in the breakup of the marriage, and *52 that Ms. Williams was entitled to $560.50 in permanent alimony. Mr. Williams appeals only the amount of the permanent alimony award.
Standard of review
The trial court is vested with much discretion in making alimony determinations. Hester v. Hester, 98-2220, p. 7 (La.App. 4 Cir. 1/19/00), 752 So.2d 269, 270. Accordingly, the trial court’s rulings on alimony issues are entitled to great weight. Id. Further, a trial court’s determinations concerning the amount of alimony awarded should not be reversed or modified by an appellate court absent a clear abuse of discretion. Id.
Mr. Williams’ ability to pay alimony
By his first assignment of error, Mr. Williams asserts that the trial court erred in finding that he had the ability to pay permanent alimony. According to the “Statement of Income and Expenses” submitted to the trial court by Mr. Williams, his gross monthly salary at the time of trial was $3,913, his net monthly salary was $2,796, and his total expenses were $3,098, for a balance of — $302. However, in setting permanent alimony, the trial court made the following modifications to Mr. Williams’ statement of expenses: reduced his total monthly food expenses from $963 to $400, reduced the gas expenses by half from $255 to $127.50, deducted a $173 monthly payment on a FNBC Visa bill, deducted the $303 monthly payment for Mr. Williams’ automobile purchased after his separation from Mrs. Williams, Land deducted a $213 monthly payment for a loan Mr. Williams made to cover his legal expenses.
Mr. Williams claims that the uncontro-verted evidence in this case — i.e., his “Statement of Income and Expenses” and the documentation presented to support that statement — prove that Mr. Williams did not have the means to pay Mrs. Williams permanent alimony. Mr. Williams claims that the trial court deducted some expenses, despite the fact that Mrs. Williams never objected to the expenses. Specifically, Mr. Williams contests the trial court’s decision to disallow two of those expenses: (1) his $303 monthly payment for his automobile, and (2) his $173 monthly payment on the FNBC Visa card.
In its reasons for judgment, the trial court noted that it was disallowing certain loan expenses, including the monthly car note and the FNBC Visa card payment, because they “were taken out by Ronald Williams after Ann Williams filed for divorce, and these obligations were incurred solely on behalf of Ronald Williams.” The trial judge failed to cite any authority for its decision to disallow the loans simply because they incurred after the filing of the petition for divorce, solely on behalf of one party.
Although no Louisiana court has expressly held that indebtedness incurred subsequent to a separation or the filing of a petition for divorce may not be considered in determining a spouse’s obligation to pay alimony, the Louisiana First Circuit Court of Appeal has affirmed trial court judgments disallowing debts incurred voluntarily post-separation. See Renfroe v. Renfroe, 428 So.2d 875 (La.App. 1 Cir. 1983); Tablada v. Tablada, 356 So.2d 1031 (La.App. 1 Cir.1977). In the instant case, the trial court disallowed a number of obligations that Mr. |4Williams incurred voluntarily after his separation from Mrs. Williams. Mr. Williams did not appeal the trial court’s decision on many of those items.
Concerning the $303 monthly payment for the 1993 Mercury Cougar automobile Mr. Williams purchased after his separation from Mrs. Williams, Mr. Williams *53 makes three arguments: (1) that the law allows him to claim the expense of owning a car when calculating his monthly expenses; (2) that the Civil District Court pre-printed “Statement of Income and Expenses” form includes a category entitled “transportation expenses,” indicating that a car note is an allowable expense; and (3) that the trial court improperly disallowed his monthly car notes, while allowing Mrs. Williams to include a $295 monthly car note. We agree with Mr. Williams’ arguments on this issue. The testimony presented at trial indicates that Mr. Williams lives in Slidell and works in New Orleans East, and that he needs an automobile to get to work. Accordingly, we find that the trial court abused its discretion in disallowing Mr. Williams’ automobile payment and amend the trial court decision to the extent it disallowed the $303 expense.
Concerning the $173 monthly payment on the FNBC Visa card, Mr. Williams claims that the record evidence is sufficient to prove that the $173 monthly payment on the FNBC Visa account “was based upon the balance of the card as of December 1995,” meaning that the debt was incurred during the marriage. Mr. Williams did indeed attach a statement for a FNBC Visa card in his name. At that time, the balance on the credit card was $6338.10 and the minimum monthly payment was $158. As Mr. Williams submitted sufficient information to prove that the charges on the FNBC Visa were primarily community debts incurred during his marriage to Mrs. Williams, we find that the trial court abused its discretion by disallowing the FNBC Visa payment. Accordingly, we amend the ^judgment to allow Mr. Williams to include a $158 monthly payment on the FNBC Visa card as an expense.
Computation of Mrs. Williams’ income
Second, Mr. Williams asserts that the trial court grossly underestimated Mrs. Williams’ income and/or potential income when computing permanent alimony. According to the “Statement of Income and Expenses” submitted to the trial court by Mrs. Williams, her gross monthly income at the time of trial was $750 rental income, her net monthly income after taxes was $625, and her total monthly expenses were $3,061, for a balance of— $2,436. However, in setting permanent alimony, the trial court made the following modifications to Mrs. Williams’ statement of expenses: deducted $150 claimed for medical and dental expenses because she is covered under Mr. Williams’ medical coverage plan; deducted her miscellaneous monthly bird expenses of $700; deducted her monthly therapy expenses of $70; reduced her clothing expenses by 50 percent from $150 to $75 per month; and reduced her transportation expenses by 50 percent from $120 to $60 per month. As a result, the trial court found that Ms. Williams’ unmet monthly expenses totaled $2,006. Mr. Williams claims that the trial court abused its discretion by failing to consider some $30,000 per year in income deposited into Mrs. Williams checking account, and by finding that Mrs. Williams did not have the ability to work.
Concerning Mrs. Williams income, Mr. Williams and his attorney devoted much of their testimony and questioning at trial to events reflected on Mrs. Williams’ checking account — including numerous deposits which he claims in brief total some $20,000 to $30,000 per year. Mrs. Williams testified that the |fiamounts were transferred from a savings account opened when she received an inheritance in 1984. She stated that she made the transfers whenever she had an unusual expense that she lacked sufficient funds to pay.
Mr. Williams asserts however that the deposits represent income from an exotic *54 bird business started by he and his wife during the marriage, and continued by Mrs. Williams after the marriage. He claims that Mrs. Williams obtained substantial sums of income when she sold birds hatched by breeding pairs purchased for the business. In fact, he intimates in brief that $35,339.30 deposited in Mrs. Williams’ checking account in 1995, during the existence of the marriage, was derived from the bird business. However, the couple’s joint 1995 income tax return, which was prepared by Mr. Williams himself, shows a $10,652 net loss from the exotic bird business. At trial, Mr. Williams essentially sought to impeach statements he made on his own income tax return, claiming that he relied on Mrs. Williams’ figures for income and expenses related to that business, and that she refused to sign the return unless he used her expenses.
The trial court heard all the evidence on this issue and made a clear credibility call in favor of Mrs. Williams. Finding no abuse of the trial court’s discretion on this issue, we reject Mr. Williams’ arguments relative to the trial court’s failure to assign Mrs. Williams any income from the exotic bird business.
Concerning Mrs. Williams’ ability to work, Mrs. Williams testified that she had contracted a disease called “pigeon lung disease” which caused scarring of the lungs from working with the cockatoos owned by the exotic bird business. Mrs. Williams also testified that she had a back problem that made it difficult for her to work. Finally, Mrs. Williams said that her efforts to find a job had been unsuccessful because of her age. She said that she had gone to the unemployment |7office and to ManPower looking for a job, but had not applied for any particular jobs.
Mr. Williams asserts that the evidence presented by Mrs. Williams was insufficient to prove that she is unable to work at any kind of job. First, Mr. Williams argues that Mrs. Williams own testimony, without corroborating medical evidence, is insufficient to prove that she is medically unable to work. We agree. A spouse claiming the inability to work for the purpose of computing alimony bears the burden of proving that disability by a preponderance of the evidence. It is axiomatic that a person’s own self-serving testimony regarding his or her inability to work is insufficient proof of the inability. In a situation such as the one presented by the instant case, the spouse claiming such an inability to work must present some type of corroborating evidence of the claimed disability, such as doctor’s reports or testimony. Except perhaps in a case where the spouse’s obvious mental or physical disability renders that spouse impaired, a trial court abuses its discretion in finding that a spouse is unable to work on the basis of that spouse’s own self-serving testimony alone.
If a non-working spouse claiming alimony fails to meet the burden of proof relating to his or her inability to work, the trial court deciding an alimony dispute must impute some income to that spouse. In determining the amount of income to impute to such a non-working spouse claiming alimony, the trial court should consider that spouse’s employment history, physical and mental health, age, and education. La. C.C. art. 112. In the instant case, the record indicates that Mrs. Williams was employed by Amoco Production in a secretarial or administrative position prior to 1989, when she requested a layoff to allow her to work full time in the family bird business. The evidence in the record of this case indicates that the |sbird business is no longer lucrative, if indeed it ever was; in fact, Mrs. Williams has asserted that she did not sell a single bird in 1996, despite the fact the business involves *55 some expense. Thus, Mrs. Williams cannot validly claim that the bird business requires her full-time work attention. Accordingly, in the absence of corroborating evidence to support Mrs. Williams’ claim that she is unable to work, the trial court must impute some income to Mrs. Williams. However, because we are announcing this rule in this case, we remand this case to the trial court to allow Mrs. Williams an opportunity to prove her claim that she has a medical condition that renders her unable to work.
Calculation of Mrs. Williams’ expenses
Third, Mr. Williams argues that the trial court abused its discretion by overestimating Mrs. Williams expenses for the purpose of computing permanent alimony. The basis of this argument is the “spread sheet” prepared by Connie Junod, C.P.A., Mr. Williams’ expert accountant witness, showing the expenses actually paid from Mrs. Williams’ checking account. By considering only the checks written from Mrs. Williams’ checking account, Ms. Junod concluded that Mrs. Williams actual expenses were only $1,611 per month. However, Ms. Junod admitted that she excluded more than $16,000 worth of checks from her calculation because she was unable to place them in a specific classification; most of those checks were for amounts dramatically larger than the majority of Mrs. Williams’ checks. Pointing to Mrs. Junod’s testimony, Mr. Williams claims that Mrs. Williams expenses should be reduced to $1,611.
However, the trial court, again making a credibility decision, chose to credit Mrs. Williams’ calculation of her expenses as documented on her “Statement of |flIncome and Expenses,” except for the modifications described above. Finding no abuse of the trial court’s great discretion in setting Mrs. Williams’ expenses, we reject Mr. Williams’ arguments on that issue.
Conclusion
On the basis of the record evidence, this court is unable to determine how the trial court calculated Mr. Williams’ $560.50 monthly alimony to Mrs. Williams. In his reasons for judgment, the trial court listed the expenses disallowed and, in some cases, recalculated some totals, then simply imposed an alimony obligation on Mr. Williams, without explaining the method he used to reach that figure. Because of this fact, and because we have determined that Mrs. Williams is entitled to an opportunity to prove her claim that she is unable to work, we remand this case to the trial court for further proceedings consistent with this decision.
AFFIRMED IN PART; AMENDED IN PART; REMANDED IN PART.