STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-176

EDDIE RUSK

VERSUS

DELORES RUSK

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 225,532
HONORABLE DONALD T. JOHNSON, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Marc T. Amy, Judges.

AFFIRMED.

Henry H. Lemoine, Jr.
607 Main Street
Pineville, LA   71360
(318) 473-4220
COUNSEL FOR DEFENDANT/APPELLEE:
    Delores Rusk

Field Vernon Gremillion, III
711 Washington Street
Alexandria, LA   71301
(318) 445-6021
COUNSEL FOR DEFENDANT/APPELLEE:
    Delores Rusk

Susan Ford Fiser
Post Office Box 12424
Alexandria, LA   71315-2424
(318) 442-8899
COUNSEL FOR PLAINTIFF/APPELLANT:
    Eddie Rusk

**AMY, Judge.**

The plaintiff sought a divorce, and the defendant brought a reconventional demand, contending that she was entitled to final periodic support. After a hearing, the trial court found in favor of the defendant and awarded final periodic support. The plaintiff now appeals that judgment. For the following reasons, we affirm.

**Factual and Procedural Background**

According to the record, the plaintiff, Eddie Rusk, married the defendant, Dolores Rusk,[1] on April 7, 2001. However, the parties separated on September 3, 2006, and Mr. Rusk filed for divorce under La.Civ.Code art. 102 shortly thereafter. Ms. Rusk filed a reconventional demand, asserting that she was entitled to final periodic support/permanent spousal support. A judgment of divorce was entered on April 30, 2007.

This matter was initially assigned to Judge Davidson, who held a hearing on Ms. Rusk's motion for final spousal support on October 29, 2007. At the hearing, Ms. Rusk testified that she was "a good wife" who prepared meals, cleaned the house, and satisfied the marital bed. She also testified that she was diagnosed with fibromyalgia after the marriage and that she was unable to work because of this condition. In support of this, Ms. Rusk submitted paperwork from the Teachers' Retirement System indicating that she was receiving disability retirement and a "Physician Report of Disability Condition" that indicates that she suffers from several medical problems, including fibromyalgia, cervical spondylosis, and

---

[1] A Second Amended Judgment of Divorce contained in the record indicates that Dolores Rusk changed her name to her maiden name, Dolores Troquille. However, as she is referred to as Ms. Rusk in the parties' briefs, we shall also refer to her as such.

depression.[2]

According to her testimony, she was in "a lot of pain" because of her disability, but conceded that some days were not as bad as others. Ms. Rusk also conceded that she had done work on the hunting lease, including driving a tractor and riding a four-wheeler, as well as going hunting. However, she also testified that she would hurt when she did so. According to Ms. Rusk's testimony, she attempted to obtain a part-time job after she became disabled but was only paid for one day because she broke her foot while using a bush hog. Ms. Rusk felt that she was not the "same person" that Mr. Rusk married because of her health issues.

Further, Ms. Rusk conceded that the parties argued about money, but she denied that she spent Mr. Rusk's money wantonly. She testified that they primarily lived off of Mr. Rusk's earnings but that their health insurance came out of her disability check. Ms. Rusk testified that she was responsible for paying the bills and that Mr. Rusk "constantly" asked where the money went. According to Ms. Rusk, there was at least one incident where she became angry when Mr. Rusk accused her of taking his money. Ms. Rusk admitted that she told Mr. Rusk that she "should blow his head off" during that argument.

In addition to her own testimony, Ms. Rusk's two sons and a family friend testified on her behalf. Their testimony was generally consistent and to the effect that Ms. Rusk was an active person before she became disabled and that she kept the house clean and prepared meals.

Mr. Rusk's testimony was often contradictory to Ms. Rusk's testimony, especially concerning her ability to work and her behavior around the house. Mr. Rusk insisted that Ms. Rusk was able to work and that she had retired because she

---

[2] Mr. Rusk objected to the introduction of Ms. Rusk's medical records. The trial court overruled that objection but left the record open so that Mr. Rusk could depose Ms. Rusk's doctors. The record does not indicate that Mr. Rusk chose to do so.

did not want to transfer. In support of this contention, he testified that she could do yard work and go hunting. Mr. Rusk specifically recalled that Ms. Rusk had helped do maintenance on their hunting lease, including using a tractor and a bush hog, fixing deer stands, and picking up limbs. He also testified that Ms. Rusk had been hunting with him and his friends.

Mr. Rusk attributed the breakup of the marriage to Ms. Rusk "abus[ing]" and "us[ing]" him, especially with regard to finances. He testified that the couple had a joint bank account that he put his money into, and she had a separate bank account that she put her money into. Mr. Rusk recounted one argument in particular concerning money in the joint bank account. According to his testimony, she had taken almost all of the money out of the account. When he asked her about it, she got mad and said "[i]f I had a gun I'd blow your . . . head off." Mr. Rusk testified that there were guns all over the house and that she wanted him to leave after that argument. However, Mr. Rusk conceded that although Ms. Rusk wanted him to return, he refused to do so.

Further, Mr. Rusk testified that when they were first married, Ms. Rusk cooked. However, after she "got laid off," she would usually be asleep on the couch when he came home from work and she would not have prepared dinner. Mr. Rusk testified that he was upset about this but that he never talked to Ms. Rusk about it. Mr. Rusk also stated that Ms. Rusk occasionally drank to excess and would sometimes lie in bed all day afterwards. In addition to these complaints, Mr. Rusk testified that Ms. Rusk treated his grandson badly, including incidents where she made his grandson sleep on the couch and insulted his weight.

The trial court took the matter under advisement at the close of the hearing. Shortly thereafter, the trial court issued reasons for judgment, finding that Ms. Rusk could not work, that she was not at fault in the breakup of the marriage, and

that she was entitled to $600.00 per month in final periodic support. However, according to Mr. Rusk's brief, "the judgment was never signed and filed until [Mr. Rusk's] counsel discovered this fact years later." A judgment awarding final periodic support was signed on October 18, 2011, after Mr. Rusk filed a Rule to Terminate Permanent Spousal Support.[3]

Mr. Rusk appeals that judgment, asserting as error that:

> 1. The trial court committed legal error by applying an incorrect legal standard to determine the fault of Eddie Rusk in the breakup of the marriage, and in fact, never actually found him at fault, and further, the factual finding itself was reached by overlooking applicable legal principles, and thus a *de novo* review by this court is the appropriate standard.
>
> 2. The trial court committed legal error in failing to consider all mandatory and relevant factors contained in La. Civil Code Article 112 in determining the amount and duration of final spousal support, and thus a *de novo* review by this court is appropriate and necessary.
>
> 3. The trial court was manifestly erroneous in failing to recognize that the evidence resented [sic] did not establish that Delores Rusk was at fault in the breakup of the marriage.
>
> 4. The trial court erred in failing to find that Delores Rusk proved that she was unable to work and in accepting her self-serving testimony that she was unable to work.

**Discussion**

*Judgment of the Trial Court*

In his first assignment of error, Mr. Rusk contends that the trial court used the wrong legal standard in finding that Ms. Rusk was entitled to final periodic support. Mr. Rusk asserts that it is unclear which standard the trial court used in making its determinations, that the trial court inappropriately shifted the burden of proof to Mr. Rusk, and that "apparently" the trial court found that Mr. Rusk was at fault for the breakup of the marriage. Accordingly, Mr. Rusk requests that we

---

[3] The record does not indicate that Mr. Rusk's motion has been ruled upon by the trial court.

4

review the record de novo.

Our review of the record does not support Mr. Rusk's contentions. As an initial matter, we observe that it is well-settled that appellate courts review judgments, not reasons for judgment. *Wooley v. Lucksinger*, 09-571 (La. 4/1/11), 61 So.3d 507. A trial court's oral or written reasons form no part of the judgment and are "merely an explication of the trial court's determinations." *Id.* at 572 (quoting *State in the Interest of Mason*, 356 So.2d 530, 532 (La.App. 1 Cir. 1977)). It is not uncommon for judgments to be upheld for reasons other than those given by the trial court. *Id.*

In determining whether a spouse seeking final periodic support is entitled to such an award, La.Civ.Code art. 112(A) provides that "[w]hen a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support[.]" The burden of proof lies on the spouse seeking support to prove that he or she is "without fault in causing dissolution of the marriage, is in necessitous circumstances, and is in need of support." *McMullen v. McMullen*, 11-220, p. 5 (La.App. 5 Cir. 12/13/11), 82 So.3d 418, 420.

Based on our review of the record, we find that the trial court considered the elements delineated in La.Civ.Code art. 112 in making its determination. Further, we do not find that the trial court inappropriately shifted the burden of proof to Mr. Rusk. Contrary to Mr. Rusk's assertion, the trial court's reasons for judgment neither state nor imply that he was at fault in the breakup of the marriage.[4] In its reasons for judgment, the trial court had stated that the marriage had deteriorated "in response to the deterioration of Ms. Rusk's health." The trial court went on to

---

[4] Additionally, we note that "[w]hen one spouse is seeking permanent periodic support, a determination of whether the other spouse's fault contributed to the destruction of the marriage is irrelevant." *Terry v. Terry*, 06-1406, p. 8 (La.App. 3 Cir. 3/28/07), 954 So.2d 790, 795-96.

discuss the evidence presented by Mr. Rusk that he submitted to contradict that submitted by Ms. Rusk. As a part of that discussion, the trial court stated that "[e]vidence presented by Mr. Rusk is not sufficient to establish fault on behalf of Ms. Rusk."

Accordingly, this assignment of error is without merit. We decline Mr. Rusk's suggestion that we review the record de novo.

*Findings of Fact*

Two of Mr. Rusk's assignments of error concern the trial court's findings of fact. Mr. Rusk specifically contends that Ms. Rusk failed to meet her burden of proof with regard to lack of fault and her inability to work. In his brief to this court, Mr. Rusk contends that the trial court erred in accepting Ms. Rusk's "self-serving testimony," that other witnesses did not corroborate her accounts, and that she did not affirmatively prove that she did not commit any of the serious acts which may constitute legal fault. He also contends that the trial court erred in determining that Ms. Rusk's alleged threats were only "stupid comments."

The fifth circuit discussed fault in the context of divorce proceedings in *McKenna v. McKenna*, 09-295, p. 5 (La.App. 5 Cir. 10/27/99), 27 So.3d 923, 925, stating:

> "Petty quarrels between husband and wife do not rise to the level of legal fault.... Legal fault consists of serious misconduct, which is a cause of the marriage's dissolution." (Citations omitted). *Hamsa v. Hamsa*, 95-736, p. 4 (La.App. 5 Cir. 1/17/96), 668 So.2d 1209, 1211.
>
> In this context, the word "fault" contemplates "conduct or substantial acts of commission or omission by the wife violative of her marital duties and responsibilities. A wife is not deprived of alimony after divorce simply because she was not totally blameless in the marital discord." *Pearce v. Pearce*, 348 So.2d 75, 77 (La.1977). To constitute fault, a wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. *Id.*

Our courts have previously found that fault for the purposes of spousal support is synonymous with the fault grounds previously entitling a spouse to separation or divorce,[5] including adultery, habitual intemperance or excess, conviction of a felony, cruel treatment or outrages, public defamation, abandonment, an attempt on the other's life, fugitive status, and intentional non-support. *Bourg v. Bourg*, 96-2422 (La.App. 1 Cir. 11/7/97), 701 So.2d 1378; *Guillory v. Guillory*, 626 So.2d 826 (La.App. 2 Cir. 1993). "To prove cruel treatment, a party needs to show a continued pattern of mental harassment, nagging, and griping by one spouse directed at the other, so as to make the marriage insupportable as mere bickering and fussing do not constitute cruel treatment for purposes of denying alimony." *Noto v. Noto*, 09-1100, p. 7 (La.App. 5 Cir. 5/11/10), 41 So.3d 1175, 1180.

The trial court's finding of fault is a factual determination subject to the manifest error standard of review. *Terry v. Terry*, 954 So.2d 790. Under this standard, the issue is whether the fact finder's determinations are reasonable. *Hebert v. Rapides Parish Police Jury*, 06-2001 (La. 4/11/07), 974 So.2d 635. Even if the appellate court feels it would have weighed the evidence differently, the appellate court may not reverse if the fact finder's determinations are reasonable in light of the record in its entirety. *Id.* This standard demands great deference to the fact finder's credibility determinations. *Id.* However, "[i]f documents or objective evidence so contradicts the witness's story or if the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination." *Brown v. American Cent. Cas. Co.*, 10-135, p. 5 (La.App. 3 Cir. 6/2/10), 40 So.3d 452, 456

---

[5] These grounds were contained within the former La.Civ.Code art. 138. *See Guillory*, 626 So.2d 826.

(citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)). However, absent those circumstances, a fact finder's determination to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous. *Id.*

In its written reasons for judgment, the trial court attributed the breakup of the marriage to Ms. Rusk's declining health. Our review of the record indicates that Ms. Rusk presented sufficient evidence to support this finding. The witnesses' testimony was generally consistent that Ms. Rusk was an active person before she became disabled. According to Ms. Rusk's testimony, she and Mr. Rusk had a "wonderful relationship." Additionally, the record indicates that that relationship did not begin to deteriorate until Ms. Rusk's medical condition worsened and she was unable to do as many physical activities as she had in the past. Mr. Rusk testified that he did not talk to her about his frustrations.

Mr. Rusk contends that Ms. Rusk's statement that she should "blow his head off" during an argument constitutes a threat that would support a finding of fault. However, in its reasons for judgment, the trial court stated that "Mr. Rusk did not provide any evidence to the Court that he believed the comments were any more than stupid comments made in the heat of an argument. There was no evidence that Ms. Rusk had the capacity or ability to harm Mr. Rusk." In her own testimony, Ms. Rusk conceded that she had made such a statement to Mr. Rusk. However, she clarified that she made the statement during an argument during which Mr. Rusk accused her of taking money out of their mutual bank account without his knowledge. According to her testimony, she was frustrated because Mr. Rusk had forgotten that they used the money to pay off the loan on her previous car. Given this testimony, we find no error in the trial court's determination as to the nature of Ms. Rusk's statements. Further, we note that, although both parties testified about arguments concerning money and Ms. Rusk's

8

inability to work, "[p]etty quarrels between husband and wife do not rise to the level of legal fault." *McKenna*, 27 So.3d at 925.

Additionally, Mr. Rusk complains that Ms. Rusk failed to affirmatively deny the laundry list of acts which can constitute fault. As noted by the second circuit in *Hutson v. Hutson*, 39,901 (La.App. 2 Cir. 8/9/05), 908 So.2d 1231, our jurisprudence offers little guidance as to how a spouse can prove freedom from fault. Here, Ms. Rusk testified that she was a good wife and that she and Mr. Rusk had a "wonderful relationship." According to the parties' testimony, their relationship did not begin to fail until Ms. Rusk's health began to degrade. Further, although she admitted that she told Mr. Rusk that she "should blow his head off," Ms. Rusk denied Mr. Rusk's accusations that she mismanaged the couple's money, faked her disability, and neglected the housekeeping. In his own testimony, Mr. Rusk contended that the marriage ended because of his frustrations with being "used" and "abused" by Ms. Rusk and Ms. Rusk's alleged failure to seek employment or keep up domestic duties. However, Ms. Rusk presented evidence in rebuttal to Mr. Rusk's claims.

Mr. Rusk complains that the trial court erred in accepting Ms. Rusk's "self-serving testimony." Although Mr. Rusk contends that the trial court should have accepted his own "uncontradicted testimony," we observe that his testimony contradicted that of Ms. Rusk on several points, especially that of whether Ms. Rusk was capable of employment and whether she cooked and cleaned. We also note that, in addition to her testimony, the testimony of Ms. Rusk's witnesses was consistent with regard to her level of activity and domestic habits.

Given this evidence, we find no error in the trial court's determination that Ms. Rusk was not at fault in the breakup of the marriage. Based on our review, there is sufficient evidence in the record for the trial court to make such a finding.

Additionally, in order to making a finding as to Ms. Rusk's fault or lack thereof, the trial court necessarily had to make a credibility determination. It was well within the trial court's purview to make those credibility findings, and this court should not disturb reasonable assessments of credibility and reasonable inferences of fact on appeal. *Hebert*, 974 So.2d 635.

Mr. Rusk contends that the trial court erred in finding that Ms. Rusk met her burden of proof with regard to her inability to work. Specifically, he contends that Ms. Rusk's ability to do certain kinds of physical activity contravenes her assertion that she is physically unable to work. Mr. Rusk also mentions that the trial court should not have relied on documents from Ms. Rusk's doctor and retirement plan.

The fourth circuit addressed a similar issue in *Williams v. Williams*, 97-2245, p. 7 (La.App. 4 Cir. 4/11/01), 803 So.2d 50, 54, stating:

> A spouse claiming the inability to work for the purpose of computing alimony bears the burden of proving that disability by a preponderance of the evidence. It is axiomatic that a person's own self-serving testimony regarding his or her inability to work is insufficient proof of the inability. In a situation such as the one presented by the instant case, the spouse claiming such an inability to work must present some type of corroborating evidence of the claimed disability, such as doctor's reports or testimony. Except perhaps in a case where the spouse's obvious mental or physical disability renders that spouse impaired, a trial court abuses its discretion in finding that a spouse is unable to work on the basis of that spouse's own self-serving testimony alone.

In the present case, Ms. Rusk testified that, in addition to several other medical problems, she had fibromyalgia and was unable to work. Three witnesses who testified for Ms. Rusk also indicated that Ms. Rusk had medical problems that prevented her from working. In addition to this testimony, Ms. Rusk submitted into evidence paperwork from the Teachers' Retirement System indicating that she was receiving disability retirement and a "Physician Report of Disability Condition" that indicates that she suffers from several medical problems, including

fibromyalgia, cervical spondylosis, and depression. Mr. Rusk objected to the introduction of this evidence; however, his objection was overruled by the trial court. Although the trial court left the record open so that Mr. Rusk could depose Ms. Rusk's doctors in order to rebut that information, there is no indication in the record that Mr. Rusk took advantage of that opportunity.

Mr. Rusk contends that Ms. Rusk's ability to do some work at the hunting club and participate in other recreational activities indicates that she is not disabled and is capable of employment. However, in its reasons for judgment, the trial court found that evidence was not persuasive. Our review of the record indicates that in addition to Ms. Rusk's testimony concerning her condition, three additional witnesses testified that Ms. Rusk was often in pain and that she had problems with her joints as a result of her medical condition. Ms. Rusk conceded that she had days that were better than others and that she sometimes did physical activities, although she was still in pain. Though Mr. Rusk contended that Ms. Rusk could work, he offered no evidence which contradicted the testimony offered by Ms. Rusk regarding her physical abilities.

As for Mr. Rusk's contention concerning the admissibility of Ms. Rusk's documentation from her physician and the retirement system, we find that it was, at most, harmless error. The trial court has vast discretion in the admissibility of evidence and its decision to admit or exclude evidence may not be reversed on appeal unless there is a clear abuse of that discretion. *McIntosh v. McElveen*, 04-1041 (La.App. 3 Cir. 2/2/05), 893 So.2d 986, *writ denied*, 05-528 (La. 4/29/05), 901 So.2d 1069. "In reviewing evidentiary decisions of the trial court, an appellate court must consider whether the particular ruling complained of was erroneous and if so, whether the error prejudiced the complainant's cause, for unless it does, reversal is not warranted." *Greene v. Taylor*, 01-1137, p. 4 (La.App. 3 Cir.

11

2/27/02), 809 So.2d 1187, 1191 (quoting *State Farm Mut. Auto. Ins. Co. v. Little*, 34-760, p. 5 (La.App. 2 Cir. 6/20/01), 794 So.2d 927, 930), *writ denied*, 02-975 (La. 4/26/02), 814 So.2d 567. *See also McCann v. McCann*, 09-1341 (La.App. 3 Cir. 3/10/10), 33 So.3d 389. Even assuming that the trial court erroneously admitted the form from Ms. Rusk's physician and the letter from Teachers' Retirement System, there was sufficient other evidence in the record to support a conclusion that Ms. Rusk is disabled and unable to work.

Given the trial court's responsibility as the finder of fact to make credibility determinations, we find that the trial court was not manifestly erroneous in determining that Ms. Rusk was unable to work. *See Williams*, 803 So.2d 50.

These assignments of error are without merit.

*Amount of Final Periodic Support*

Mr. Rusk's final assignment of error concerns the amount of final periodic support awarded by the trial court. Mr. Rusk contends that the trial court failed to consider the factors delineated in La.Civ.Code art. 112(B) and that the amount awarded is unreasonably high.

Once the trial court finds that the spouse seeking final periodic support is free from fault, it may then make an award based on the needs of the claiming party and the ability of the other party to pay. *Hammack v. Hammack*, 99-2809 (La.App. 1 Cir. 12/22/00), 778 So.2d 70, *writ denied*, 01-913 (La. 5/25/01), 793 So.2d 166. The trial court's determination as to the amount of spousal support will not be disturbed on appeal absent a manifest abuse of discretion. *Goodnight v. Goodnight*, 98-1892 (La.App. 3 Cir. 5/5/99), 735 So.2d 809.

In determining the amount and duration of final support, the trial court "shall consider all relevant factors," which "may include:"

(1) The income and means of the parties, including the liquidity of

such means.

(2) The financial obligations of the parties.

(3) The earning capacity of the parties.

(4) The effect of custody of children upon a party's earning capacity.

(5) The time necessary for the claimant to acquire appropriate education, training, or employment.

(6) The health and age of the parties.

(7) The duration of the marriage.

(8) The tax consequences to either or both parties.

La.Civ.Code art. 112(B).

In *Gremillion v. Gremillion*, 39,588, pp. 14-15 (La.App. 2 Cir. 4/6/05), 900 So.2d 262, 271 (footnote omitted), the second circuit discussed the various considerations the trial court may take in determining the amount of spousal support, stating:

> [T]he basic tests for the amount of spousal support are the needs of that spouse and the ability of the other spouse to pay. La. C.C. arts. 111, 112; [*Roan v. Roan*, 38,383 (La.App. 2 Cir. 4/14/04), 870 So.2d 626]; [*Carr v. Carr*, 33,167 (La.App. 2 Cir. 4/5/00), 756 So.2d 639]. The award for final periodic spousal support is governed by La. C.C. art. 112, which requires the court to consider all relevant factors. The nine specific factors listed in C.C. art. 112 are not exclusive. Article 112 also limits the amount to not exceed one-third of the obligor's net income. The trial court is vested with great discretion in making post-divorce alimony determinations, and its judgment will not be disturbed absent a manifest abuse of discretion. *Roan*, *supra*.
>
> The earning capacities of the parties, their age, and the duration of the marriage are relevant factors listed in La. C.C. art. 112. The relative financial positions of the parties and the standard of living during the marriage are not listed in C.C. art. 112 but can be relevant factors. As stated above, all relevant factors are to be considered and the court is not limited to those specifically listed in the code article. *Knowles v. Knowles*, 02-331 (La.App. 3 Cir. 10/2/02), 827 So.2d 642.

Accordingly, as the language of Article 112(B) is permissive and not mandatory, the trial court is not required to consider all of the factors listed therein. *Prestenback v. Prestenback*, 08-457 (La.App. 1 Cir. 11/18/08), 9 So.3d 172.

After reviewing the record, we find no error in the trial court's award of $600.00 per month in final periodic support. The trial court heard evidence concerning Ms. Rusk's need for support and her inability to work. In addition to her testimony, Ms. Rusk submitted an affidavit of her income and expenses indicating that she receives $661.26 in income. However, after deductions for health insurance and her car note, she receives $176.79. Ms. Rusk contends that her monthly expenses are $1,952.08.[6] Mr. Rusk contends that he earns $2,000.00 per month. However, he testified that he pays himself $2,000.00 per month and takes a bonus at the end of the year. He conceded that his income in 2004 was $74,345.00 and in 2006 was $69,826.00.

The trial court's reasons for judgment specifically addresses only "[t]he income and means of the parties," "[t]he financial obligations of the parties," and Ms. Rusk's ability to work. However, there is also information in the record concerning "[t]he health and age of the parties" and "the duration of the marriage." The list of factors delineated in Article 112(B) is not exclusive. *See* La.Civ.Code art. 112(B); *Prestenback*, 9 So.3d 172. We also note that the La.Civ.Code art. 112(C) limits the award to one-third of the payor spouse's net income. The trial court's award is well within that limitation. Accordingly, given the evidence in the record, we find that the trial court did not abuse its great discretion in awarding Ms. Rusk $600.00 per month in final periodic support.

This assignment of error is without merit.

---

[6] Ms. Rusk did note that, of this amount, Mr. Rusk pays $346.00 for a "land note." Thus, excluding that expense, Ms. Rusk's overall expenses would be $1,606.08.

**DECREE**

For the foregoing reasons, we affirm the trial court's judgment in its entirety.

Costs of this appeal are allocated to the plaintiff, Eddie Rusk.

**AFFIRMED.**