# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 14-1320

MICHAEL DALE NEFF

VERSUS

RAE JONES NEFF

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 246,781, DIVISION F
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, James T. Genovese, and Phyllis M. Keaty, Judges.

**AFFIRMED AS AMENDED.**

Joseph M. Reynolds
Eugene P. Cicardo, Jr.
Law Office of Eugene P. Cicardo, Jr.
Post Office Box 1128
Alexandria, Louisiana 71309-1128
(318) 445-2097
COUNSEL FOR PLAINTIFF/APPELLANT:
    Michael Dale Neff

**Susan Ford Fiser**
**The Ford Law Firm**
**Post Office Box 12424**
**1630 Metro Drive**
**Alexandria, Louisiana 71315-2424**
**(318) 442-8899**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Rae Jones Neff**

**GENOVESE, Judge.**

In this domestic case, Michael Dale Neff appeals the trial court's judgment finding his former spouse, Rae Jones Neff, free from fault in the dissolution of their marriage and awarding her $750.00 per month final periodic spousal support. For the reasons that follow, we affirm as amended.

## FACTS AND PROCEDURAL HISTORY

Mr. and Mrs. Neff were married on August 4, 1990, and were granted a judgment of divorce on March 24, 2014. Incidental to the divorce proceedings, Mrs. Neff filed a Rule for Final Spousal Support on March 18, 2014, which came before the trial court on July 7, 2014. Following a hearing, the trial court issued written reasons for judgment, finding Mrs. Neff to be free from fault in the dissolution of the marriage and awarding her final periodic spousal support of $750.00 per month retroactive to March 18, 2014. Mr. Neff appeals.

## ASSIGNMENTS OF ERROR

Mr. Neff assigns the following errors for our review:

**1.**

The [t]rial [c]ourt erred in finding [Mrs. Neff] free from fault in the dissolution of the marriage.

**2.**

The [t]rial [c]ourt erred in finding [Mrs. Neff] to be in need of permanent periodic spousal support; or in the alternative, if [Mrs. Neff] was properly found to be in need of permanent spousal support, the award of permanent periodic support in the amount of $750.00 per month is excessive, given the evidence and stipulations[.]

**3.**

The [t]rial [c]ourt committed error when it ordered [Mr. Neff] to pay seven hundred and fifty ($750.00) dollars per month, as this amount is greater than one[-]third of Mr. Neff's net income, in contravention of La.[Civ.Code art. 112(D)].

**4.**

The [t]rial [c]ourt committed error in refusing to allow [Mr.] Neff to present evidence as to [Mrs.] Neff's cohabitation or concubinage, which, if proven would have prevented an award of permanent spousal support.

**5.**

The [t]rial [c]ourt committed error by making the award of final periodic support retroactive to a date which preceded the judgment of divorce.

## LAW AND DISCUSSION

Louisiana Civil Code Article 111[1] provides authority for a trial court's award of final periodic spousal support. Louisiana Civil Code Article 112(A) governs how such a determination is to be made by a trial court and provides that "[w]hen a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support" in accordance with La.Civ.Code art. 112(C). The burden of proving freedom from fault is on the party seeking final periodic spousal support. *Rusk v. Rusk*, 12-176 (La.App. 3 Cir. 6/6/12), 102 So.3d 193 (citing *McMullen v. McMullen*, 11-220 (La.App. 5 Cir. 12/13/11), 82 So.3d 418). A trial court's finding on the issue of fault is subject to the manifest error standard of review on appeal. *Id.*

Mr. Neff first asserts that the trial court erred in finding Mrs. Neff to be free from fault in the dissolution of their marriage. We disagree.

---

[1]Louisiana Civil Code Article 111 provides:

> In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage in accordance with the following Articles.

In its written reasons for judgment, the trial court addressed Mr. Neff's allegations of cruel treatment on the part of Mrs. Neff, which he contends constituted fault. After citing the relevant jurisprudence on the issue of cruel treatment, the trial court outlined the facts, stating as follows:

> In this case, Mr. Neff contends that Mrs. Neff's fault consisted of cruel treatment. . . . The evidence before this [c]ourt thus consisted primarily of the parties' conflicting testimony. Mr. Neff put on testimony that Mrs. Neff engaged in cruel treatment by continuously cursing at him and expressing her displeasure with the prior state of their marriage. Mr. Neff also verbally expressed on [the] record the profanity allegedly used by Mrs. Neff during the marriage that contributed to his version of the cruel treatment towards him.

However, the trial court concluded that Mrs. Neff's "profane language does not rise to the level of fault during the marriage." The trial court also dismissed Mr. Neff's implications of adultery allegedly committed by Mrs. Neff, finding that "he put on no evidence to that effect."

While Mr. Neff maintains that he was the victim of cruel treatment, Mrs. Neff testified that the problems in their marriage were typical problems faced by married couples. As the trial court noted, "Mrs. Neff testified that she was willing to fix the problems in their marriage with counseling, even after Mr. Neff admitted to having an affair with another woman during the marriage."[2] According to Mrs. Neff, she was a good wife and mother, and she supported her husband. She also "stood by him through his drug addiction[,]" and "stood by him through good and bad through [their] marriage." Mrs. Neff's testimony was corroborated by other witnesses.

This court addressed the issue of cruel treatment in *Rusk*, 102 So.3d. at 198-99 (footnote omitted) wherein we stated:

_____

[2]During trial, Mr. Neff denied having an affair. Mrs. Neff, however, testified about the particular facts surrounding her discovery of his extra-marital affair with a female he met during drug rehabilitation.

The fifth circuit discussed fault in the context of divorce proceedings in *McKenna v. McKenna*, 09-295, p. 5 (La.App. 5 Cir. 10/27/09), 27 So.3d 923, 925, stating:

> "Petty quarrels between husband and wife do not rise to the level of legal fault. . . . Legal fault consists of serious misconduct, which is a cause of the marriage's dissolution." (Citations omitted). *Hamsa v. Hamsa*, 95-736, p. 4 (La.App. 5 Cir. 1/17/96), 668 So.2d 1209, 1211.

> In this context, the word "fault" contemplates "conduct or substantial acts of commission or omission by the wife violative of her marital duties and responsibilities. A wife is not deprived of alimony after divorce simply because she was not totally blameless in the marital discord." *Pearce v. Pearce*, 348 So.2d 75, 77 (La.1977). To constitute fault, a wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. *Id.*

> Our courts have previously found that fault for the purposes of spousal support is synonymous with the fault grounds previously entitling a spouse to separation or divorce, including adultery, habitual intemperance or excess, conviction of a felony, cruel treatment or outrages, public defamation, abandonment, an attempt on the other's life, fugitive status, and intentional non-support. *Bourg v. Bourg*, 96-2422 (La.App. 1 Cir. 11/7/97), 701 So.2d 1378; *Guillory v. Guillory*, 626 So.2d 826 (La.App. 2 Cir.1993). "To prove cruel treatment, a party needs to show a continued pattern of mental harassment, nagging, and griping by one spouse directed at the other, so as to make the marriage insupportable as mere bickering and fussing do not constitute cruel treatment for purposes of denying alimony." *Noto v. Noto*, 09-1100, p. 7 (La.App. 5 Cir. 5/11/10), 41 So.3d 1175, 1180.

In its written reasons for judgment, the trial court expressly and purposefully noted that it "largely relied on the credibility of the parties to make a sufficient ruling." Differing testimonies presented to the trial court on fault and corollary issues necessitated credibility assessments. It is well settled in the jurisprudence that "a fact finder's determination to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous." *Rusk*, 102 So.3d at 199.

4

We have considered Mr. Neff's allegations relative to Mrs. Neff's purported fault and the evidence contained in the record. In addition to being argumentative and speaking to him in an abusive manner,[3] Mr. Neff contends that Mrs. Neff was guilty of refusing sexual relations and that she was "deceitful about the family finances." Further, he claims that Mrs. Neff was not supportive of him while he underwent a drug rehabilitation program and during and after his hospitalization for a "heart condition."

We find from our review of the record that although Mrs. Neff may not be "totally blameless in the marital discord[,]" the behavior of which Mr. Neff complains is not supported by the evidence, at least not in the manner and degree to which he depicts it. *Id.* at 198. Although he asserts that Mrs. Neff was unsupportive of him during drug rehabilitation, Mrs. Neff testified that she actually got him into the program and went with him to the initial consultation. Other allegations made by Mr. Neff, including those of infidelity, are simply contradicted in the record or call for critical credibility determinations by the trial court.

Despite their marital problems, the evidence established that Mrs. Neff was "devastated" upon discovering Mr. Neff was having an affair. According to her testimony, even after this discovery, she "still tried to fight for [the] marriage because you don't throw that many years away."

In this case, the trial court found that Mrs. Neff had met her burden of proving that she was free from fault in the dissolution of the marriage after considering the evidence and making the necessary credibility determinations. We find no error in the trial court's determination that Mrs. Neff was free from fault.

---

[3]Mr. Neff testified that during an argument, Mrs. Neff stated to him: "If I had a knife[,] I'd stab you in your . . . heart right now." Mrs. Neff denied making this statement. We note that *Rusk* contained comparable allegations of a spouse threatening "[i]f I had a gun I'd blow your . . . head off[,]" as well as evidence of the spouse taking most of the money contained in a joint bank account; yet, the spouse was found to be free from fault. *Id.* at 196.

5

In his second assignment of error, Mr. Neff contends that the trial court erred in finding Mrs. Neff's income to be insufficient to meet her needs, or alternatively, that the amount of the award, $750.00 per month, is excessive. Again, we disagree.

Following its determination that Mrs. Neff was free from fault, the trial court considered whether she was entitled to final periodic spousal support. As with a determination regarding fault, a trial court's factual determination as to whether a spouse is entitled to a final periodic spousal support award may not be reversed unless it is found to be manifestly erroneous. *Barron v. Barron*, 13-450 (La.App. 3 Cir. 10/9/13), 123 So.3d 1232 (citing *Baggett v. Baggett*, 96-453 (La.App. 3 Cir. 4/23/97), 693 So.2d 264).

Pursuant to La.Civ.Code arts. 111 and 112, a spouse who is free from fault may be entitled to final periodic spousal support based on the needs of that spouse and the ability of the other spouse to pay. "The court shall consider all relevant factors in determining the amount and duration of final support[.]" La.Civ.Code art. 112(C).

In considering Mrs. Neff's entitlement to a final periodic spousal support award, the trial court prefaced its ruling with the following very pertinent statements on credibility (footnotes omitted):

> The trial court is uniquely vested with the responsibility of evaluating credibility and making reasonable inferences of fact. A reasonable factual basis exists to support Mrs. Neff's contentions that she is in need and Mr. Neff has the means to pay. In light of his sorely diminished credibility, this [c]ourt is clearly within its province to discredit Mr. Neff's testimony as implausible and, therefore, unreasonable. Both parties put on testimony that Mr. Neff's income primarily supported the marriage. Additionally, Mrs. Neff testified she has a desire to enroll in nursing school and is currently working a second job, therefore showing a further need for support. Based upon the evidence presented, Mr. Neff has the ability to pay spousal support.

6

Mr. Neff contends that Mrs. Neff's income is more than sufficient to meet her needs. He calculates her yearly income at approximately $38,800.00 and argues that she "understates her income and overstates her expenses." Mr. Neff devotes much time in his brief to contesting individual income and expense figures as inaccurate and/or improperly included by the trial court in making its determination.

On the other hand, Mrs. Neff argues that Mr. Neff's estimation of her yearly income of $38,800.00 is inaccurate. Further, she points out that her current income is the result of her "working virtually 'round the clock' at two jobs, a daytime clerical job and a night sitting job[.]" Mrs. Neff testified that she earns $10.00 per hour working full-time as a receptionist during the day and $8.00 as a care giver of an elderly lady at night. Mrs. Neff argues that considering only her daytime job, her income would only be $20,800.00 per year and that she "should not be punished for working night and day, at two jobs[.]" It was her testimony that she wanted to quit working at night because she is physically unable to continue doing both, but she could not afford to make only $10.00 per hour. She also testified that she would like to enroll in nursing school to improve her earning capacity. Considering her dual employment, the trial court noted that it showed "a further need for support."

Also to be considered is Mr. Neff's ability to pay. According to the record, Mr. Neff has remarried and has another child. His current living situation includes maintaining credit card debt and the payment of two car notes, which he is able to do while his current wife does not work. Mr. Neff earns $6,344.00 per month and receives $960.00 in disability for a total annual income of over $87,000.00.

Based upon the evidence and the testimony of the parties, much of which was contradicted and/or uncorroborated, thereby calling for credibility

7

determinations to be made by the trial court, we do not find the trial court's conclusion that Mrs. Neff's income is insufficient to satisfy her needs and that Mr. Neff has the ability to pay to be manifestly erroneous. Therefore, we affirm that portion of the trial court's judgment finding Mrs. Neff to be entitled to an award of final periodic spousal support. Next, we consider the propriety of the amount awarded.

Mr. Neff argues, in the alternative, that even if Mrs. Neff is entitled to an award of final periodic spousal support, the $750.00 per month awarded by the trial court is excessive. We find no merit to this contention.

As to the amount of the $750.00 final periodic spousal support award, the trial court reasoned that "[c]onsidering the parties' income, expenses, earning capacity, health, age, and the duration of their marriage, this [c]ourt concludes that Mrs. Neff is entitled to an award of final periodic spousal [support] of $750.00 per month." Notably, the amount of this award of the trial court is subject to an abuse of discretion standard of review as long as the award is within the legal limits and is supported by the facts. *Barron*, 123 So.3d 1232 (citing *Baggett*, 693 So.2d 264).

The calculation of the amount to which Mrs. Neff is entitled involves a consideration of the parties' underlying income and expenses. As set forth above, the trial court was presented with conflicting and often unsubstantiated testimony and was forced to rely on credibility. The trial court found that Mr. Neff's testimony was "implausible" and "unreasonable[.]" Thus, the trial court considered the nature of the evidence, the relevant factors in accordance with La.Civ.Code art. 112, and determined that Mrs. Neff was entitled to an award of $750.00 per month. Mr. Neff disagrees with the trial court's determination and urges that Mrs. Neff actually has a "monthly surplus in income of $1,527.92."

8

Mr. Neff also complains of the $750.00 per month award in his third assignment of error. Specifically, he contends that the amount is greater than one-third of his net income, in violation of La.Civ.Code art. 112(D). Mr. Neff asserts that his monthly gross income is $7,304.00, from which $2,486.35 is deducted. He also itemizes his monthly expenses as $8,696.17, thereby creating a deficiency of $1,392.17. Therefore, he concludes that one-third of his net income is actually a negative number.

As Mrs. Neff notes, Mr. Neff's own Income and Expense Affidavit reflects a $4,817.58 net income. Additionally, if "typical[,]" his paychecks substantiate nearly $10,000.00 in overtime pay. Mrs. Neff concludes that Mr. Neff is making $76,128.00 per year, plus he receives $11,520.00 in disability payments per year, for a total of $87,648.00 per year. Mrs. Neff compares and contrasts this amount to her income of $20,800 per year "if she only worked her daytime job[.]"

Based upon the record, we do not find the amount of $750.00 per month in final periodic spousal support to be excessive, especially considering the trial court's express and legitimate reliance on Mr. Neff's lack of credibility. The record is void of corroborating proof of his purported expenses and contains significant contradictory information as to his income. We find no abuse of the trial court's discretion in its award of $750.00 per month of final periodic spousal support for Mrs. Neff. We likewise find that said amount is not in excess of one-third of Mr. Neff's income in violation of La.Civ.Code art. 112.

Mr. Neff's fourth assignment of error may be readily dismissed. He urges that the trial court erred in "refusing" to allow the introduction of evidence of Mrs. Neff's "cohabitation or concubinage[.]" Our review of the record reveals that the trial court did not prohibit the introduction of evidence of this nature. To the contrary, counsel for Mr. Neff was given the opportunity to question Mrs. Neff

9

about her relationship. She answered the questions posed to her and denied these allegations. Only after it heard Mrs. Neff's testimony did the trial court sustain counsel's objection as to relevance. Thereafter, it did not permit further questioning, since the evidence simply failed to establish his allegations. This assignment of error is without merit.

In his final assignment of error, Mr. Neff complains that the trial court erroneously awarded Mrs. Neff final periodic spousal support retroactive to March 18, 2014, the date she filed her Rule for Final Spousal Support, as opposed to March 24, 2014, the date the judgment of divorce was signed. On this issue, Mrs. Neff concedes, in brief, that she "will agree that Mr. Neff is entitled to a credit of $147.96[,] for the erroneous starting date of the final spousal support." Therefore, this court amends that portion of the trial court judgment awarding Mrs. Neff final periodic spousal support "effective the date of judicial demand, March 18, 2014[,]" to reflect an effective date of March 24, 2014, resulting in a credit to Mr. Neff in the amount of $147.96.

## DECREE

For the reasons assigned, we affirm the trial court's judgment finding Rae Jones Neff free from fault in the dissolution of the marriage and awarding her final periodic spousal support of $750.00 per month. Additionally, we affirm, but amend, that portion of the trial court judgment providing an effective date of March 18, 2014 to reflect the accurate date of March 24, 2014, thereby entitling Mr. Neff to a credit of $147.96. Costs of this appeal are assessed to Michael Dale Neff.

**AFFIRMED AS AMENDED.**

10