WILLIAMS, J.
| defendant, Corek Hall, was charged by bill of information with possession with intent to distribute a Schedule III controlled dangerous substance (“CDS”), a violation of LSA-R.S. 40:968; possession of a legend drug, a violation of LSA-R.S. 40:971(B)(l)(h); and possession with intent to distribute a Schedule V CDS, a violation of LSA-R.S. 40:97o.[1] The defendant was convicted as charged and sentenced to serve eight years in prison at hard labor for the possession with intent to distribute a Schedule III CDS (Lortab) conviction, three years at hard labor for the possession of a legend drug (Soma) conviction and three years at hard labor for the possession with intent to distribute a Schedule V CDS (Codeine) conviction. The trial court ordered the sentences to run concurrently. For the following reasons, we affirm.
FACTS
On November 18, 2009, by amended bill of information, the defendant was charged with possession with intent to distribute a Schedule III CDS (Lortab), possession of a legend drug (Soma) and possession with intent to distribute a Schedule V CDS (Codeine). Subsequently, the defendant filed a motion to suppress, alleging that “the items seized were the result of an illegal search and a violation of the Defendant’s constitutional right[.]” Following a hearing the trial court denied the motion. Subsequently, the defendant waived his right to a jury trial, opting for a bench trial instead. Additionally, in lieu of conducting a trial, the state |2and the defendant agreed to stipulate to the facts adduced in the hearing on the motion to suppress. The transcript of the hearing on the motion and evidence of the drugs and money seized were submitted to the trial court.
The record reveals that Officer Craig Vines, of the Winn Parish Sheriffs Department, testified as the state’s first witness at the hearing on the motion to suppress.[2] Officer Vines testified as follows: on February 16, 2009, the police department received several complaints about drug activity taking place in the parking lot of the Economy Inn in Winnfield, Louisiana; Officer Vines, Officer Charles Hayes and the *191 chief of police of the Winnfield City Police Department conducted a stakeout of the motel; the motel complex consisted of three separate buildings; when the officers arrived at the motel, he and Officer Hayes waited between two of the buildings, while the chief waited in a different area; he and Officer Hayes observed the defendant walk between two of the motel’s buildings; the defendant looked around and then approached an abandoned bathtub; the defendant placed some unknown items under the bathtub; the defendant looked around again and then walked away from the buildings; the chief of police, who had been watching the defendant’s motel room for approximately 30 minutes, saw the defendant enter a motel room; Officer Vines and Officer Hayes continued to watch the bathtub and no one approached it; the officers went to the bathtub and searched under it; the officers discovered 82 pills, packaged together in a plastic bag, and a bottle of cough syrup containing Codeine; the two officers conferred with the Ischief of police; all three police officers then knocked on the defendant’s motel room door, advised him of his Miranda rights and placed him under arrest; the officers entered the defendant’s motel room and observed another clear plastic bag of pills in plain view on top of a dresser; these pills on the dresser were tested and were determined to be Lortab; a search of the defendant’s person resulted in the discovery of “several thousand” dollars in his jacket; the officers also searched another jacket on the floor of the motel room and found “several thousand” dollars; the total amount of cash seized was $7,163; the confiscated items were turned over to Lieutenant Charles Curry, who sent them to the crime lab for analysis.
On cross-examination, Officer Vines admitted that it was dark outside and he did not see what the defendant placed under the bathtub. Officer Vines stated that in addition to the drugs, they found empty soft drink cans and bottles under the bathtub. Officer Vines admitted that the officers did not take any photographs of either the bathtub or the area under it. In explaining their actions, he further testified that he and Officer Hayes waited approximately 30 minutes after the defendant left before walking up to the bathtub and no one else was seen approaching the bathtub. Officer Vines clarified that the chief of police was the only person who saw the defendant enter the motel room.[3]
Officer Hayes first testified on cross-examination. He corroborated Officer Vines’ testimony that he and Officer Vines were at the Economy Inn on February 16, 2009, watching for drug activity. Officer Hayes testified as Rfollows: he and Officer Vines waited between two buildings; they saw the defendant walk from around one of the buildings and over to the bathtub; the defendant then “squatted down” and placed a “package of some sort” under the bathtub; the defendant then walked back in the direction from which he had come; he did not see what the defendant placed under the bathtub; after the defendant left, he and Officer Vines called the chief of police, who informed them that the defendant had walked into Room 37 of the motel. Contrary to Officer Vines’ testimony that the officers waited 30 minutes before approaching the bathtub, Officer Hayes stated that he and Officer Vines walked over to the bathtub to check to see what was under it as soon as the defendant left the area. He stated that after finding the drugs, he, Officer Vines and the chief of police went to the defendant’s room, and he placed the defendant in handcuff's. He *192 also testified that he patted the defendant down and found “something like” $1,163 in his jacket pocket. Additionally, he stated that the chief of police searched the other jacket and found a larger amount of money. Officer Hayes testified that he did not participate in the search of the room because he was with the defendant.
On direct examination, Officer Hayes clarified his previous testimony. He testified that he and Officer Vines initially went over to the bathtub to see what was underneath, and then waited “a while” to see if someone was going to retrieve the items from under the tub. He stated that he and Officer Vines waited a little while; however, they did not wait 30 minutes before approaching the bathtub.
Following Officer Hayes’ testimony, the trial court denied the motion [ 5to suppress, stating:
The question in this particular case is whether or not the seizure was illegal. The defendant was seen, apparently, placing something under a bathtub. When the officers went to the scene, they found drugs under the bathtub where something had apparently been placed and although it’s true that they didn’t — could not and did not actually see whether Mr. Hall placed those things there, it was not illegal for them to secure possession of those drugs. It also would have given them probable cause to arrest Mr. Hall. Mr. Hall’s whereabouts were determined by the Chief of Police. They went to ... where Mr. Hall was in the motel and at that time they placed him under arrest. After being placed under arrest, you are subject to a search. Okay? [Yjou’re also subject to being arrested for anything that may also be in plain view at the time. Some of the drugs were in plain view on the dresser. [A]lso, after someone is arrested on a drug offense, that would have given them reason to believe that there may have been other drugs in the thing. In addition, they had to do an inventory search. [T]he seizure of the drugs under these circumstances was not illegal.
On April 19, 2010, the assistant district attorney informed the trial court, in open court, that the defendant desired to waive his right to a jury trial and had opted for a bench trial. The following exchange then took place:
Defense Counsel: [I] think we [have] another idea and — and I’d like to review it first. I’d — I’d like to order a copy of the Motion to Suppress that we had on this matter. After I review it and perhaps after Mr. Crews reviews it, perhaps we could stipulate that that’s the testimony—
Trial Court: Okay.
Defense Counsel: — and introduce the motion. I — I think you recall that at ■ the motel—
Trial Court: Yes. That’s right.
| ^Defense Counsel: —and we — we litigated that pretty thoroughly that day.
Trial Court: Okay.
The trial court stated that it had no objection to the stipulation, and then addressed the defendant and his counsel as follows:
Trial Court: [M]r. Hall, you have a right to a jury trial in front of a jury of your peers. However, you also have a right to have the matter tried in front of me if that is your desire and, uh, once you make that determination, that’s what it is. You can’t turn around and go back. Okay?
Defendant: Yes, Sir.
Trial Court: So, you’ve talked it over with Mr. Higgins?
*193 Defense Counsel: No. I haven’t. [I] haven’t talked it over, but that is ... my recommendation strongly.
[[Image here]]
Trial Court: All right. Do you want to rely on Mr. Higgins’ recommendation, Mr. Hall?
Defendant: Yes, Sir.
Trial Court: Okay. So you waive your right to a jury trial[?]
Defendant: Yes, Sir[.]
On September 7, 2010, a hearing was held, wherein the parties agreed to a joint stipulation. The following exchange took place:
Prosecutor: [Wje’ve agreed to try this matter based on joint stipulations in agreement as to evidence, and what we will do is make a joint offering in docket 41653 the testimony taken at the Motion to Suppress hearing on |7February 3, 2010, and we’ll deal right now with docket 41653. That’ll be a joint offering. In further connection with ... 41653 Your Honor, state number one will be the report of Officer [C]raig Vines in this case, and then state number two will be [82] pills that were taken as identified in the report from underneath the wash tub or something!.] State number three are various pills taken from inside the room occupied by Corek Hall and we’ll also stipulate for the record in the report Craig Vines refers to Corek Hall, the defendant seated here, and also another name he went by, name of Pennywell. Both of those people are one and the same[.]
Defense Counsel: Yeah. We will stipulate to that.
The parties also stipulated to State’s Exhibits Four, Five and Six (the bottle of Codeine, the crime lab certificate for the pills and the crime lab certificate for the Codeine). Further, the parties stipulated to State’s Exhibit Seven, the cash recovered from the defendant. Following the joint stipulations, defense counsel requested, and was granted, 45 days “to gather some information” to submit on behalf of his client.
On November 10, 2010, a hearing was held to determine the defendant’s guilt or innocence based on the evidence already submitted. However, defense counsel was not present at the hearing, therefore, no determination was made. On December 9, 2010, another hearing was conducted; however, the trial court stated that it needed additional time to rule. The defendant and his attorney were present for the hearing, but no mention was made of the additional information to be submitted by the | sdefense.[4]
On July 14, 2011, a hearing was conducted, without the presence of the defendant, and the trial court stated that it had prepared a ruling regarding the defendant’s guilt or innocence. However, the hearing was continued due to the defendant’s absence. At that time, defense counsel asked whether he was still allowed to “present some more stuff’ to the court prior to the determination of guilt. Defense counsel stated that he would present additional information “in writing within ten days.” The trial court denied defense counsel’s request, stating that the court had “already made a decision.”
On August 18, 2011, another hearing was held and the trial court found the *194 defendant guilty as charged of all three counts based on the evidence adduced at the hearing on the motion to suppress. The court ordered the state to provide it with a presentence investigation report.
On November 16, 2011, the defendant filed a motion for new trial, alleging that the verdict was contrary to the law and evidence. The defendant conceded that he had stipulated to the testimony adduced at the motion to suppress; however, he argued that he had not relinquished his right to testify and/or to present evidence on his behalf. The trial court denied the defendant’s motion for new trial, reasoning that the stipulations were made with the understanding that there would be no testimony by the defendant.
| .¡Thereafter, the defendant sought supervisory review of the trial court’s denial of the motion for new trial. On December 22, 2011, this court denied the writ “on the showing made,” stating that the issue presented in the writ application could be raised in an appeal.
On January 26, 2012, a sentencing hearing was conducted. After reviewing the factors set forth in LSA-C.Cr.P. art. 894.1, and noting the defendant’s prior criminal history, the trial court sentenced the defendant to serve eight years at hard labor for the possession with intent to distribute Lortab conviction, three years at hard labor for the possession of Soma conviction, and three years at hard labor for the possession with intent to distribute Codeine conviction. The trial court ordered the sentences to run concurrently.' The defendant filed a motion to reconsider his sentences on February 1, 2012. The trial court denied the motion.
The defendant appeals.
DISCUSSION
The defendant contends the trial court erred in denying his motion for new trial. He concedes that the parties stipulated to the evidence adduced at the hearing on his motion to suppress. However, the defendant maintains that he reserved his right to present evidence and to testify prior to a verdict being rendered.
The state argues that the defendant was given “more than ample time” to submit evidence, including testimony, but failed to do so. The state noted that on September 7, 2010, the trial court gave the defendant 45 days to submit additional evidence following the state and defense stipulations. | inThe defendant failed to submit such evidence at any time before the hearing on July 14, 2011, when the trial court announced that it had already prepared a ruling. The state maintains that there is no indication in the record that the defendant was ever denied his right to testify, and the defendant accepted the judicial proceedings by acquiescing in them.
LSA-C.Cr.P. art. 851 provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilt;
*195 (4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The decision on a motion for a new trial rests within the sound discretion of the trial judge. The trial court’s ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Cox, 2010-2072 (La.11/19/10), 48 So.3d 275; State v. Horne, 28,327 (La.App.2d Cir.8/21/96), 679 So.2d 953, writ denied, 96-2345 (La.2/21/97), 688 So.2d 521.
Criminal trials conducted wholly or partially based on stipulations, although rare, are not unheard of in Louisiana. In State v. Owens, 501 So.2d 968 (La.App. 2d Cir.), writ denied, 507 So.2d 224 (La.1987), the defendant was tried by a jury on charges of aggravated rape and aggravated burglary; however, the jury failed to reach a verdict and a mistrial was declared. When the case was called for retrial, the defendant waived his right to a jury trial and agreed that the case would be decided by the trial judge based upon the record of the first trial. After reviewing the record of the first trial, the trial judge found the defendant guilty of forcible rape, a lesser included offense. On appeal, the defendant argued that the trial by stipulation was tantamount to an involuntary guilty plea and denied him the constitutional rights afforded by a trial on the merits. This Court rejected the defendant’s argument, finding that the defendant had been advised of his right to a jury trial and had waived that right. This Court noted that the defendant had understood that the determination of his guilt would be based on the transcript of the previous trial. Additionally, this Court noted that the defendant’s constitutional rights were adequately protected at the first trial and his waiver of his right to a new trial did not amount to an involuntary guilty plea. Furthermore, this Court specifically rejected the defendant’s argument that a trial by stipulation, in and of itself, was unauthorized by L¡¡law. Id.[5]
In State v. Harris, 470 So.2d 601 (La.App. 1st Cir.), writ denied, 477 So.2d 1123 (La.1985), the defendant was charged with simple burglary of an inhabited dwelling. He stipulated to the testimony adduced at his preliminary hearing for trial purposes and was found guilty as charged. On appeal, the defendant argued that the trial court erred in finding him guilty on the basis of the stipulation. He also argued that the stipulation was “in actuality” a guilty plea, entitling him to the constitutional protections set forth in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The appellate court *196 found that stipulating to the testimony from the preliminary hearing did not constitute an admission of guilt; thus, the defendant had never pleaded guilty. The court noted that the defendant was convicted based upon testimony introduced by stipulation and concluded, “We find this testimony sufficient to convict the defendant as charged.” Id. at 603.
A defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense. Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); State v. Dauzart, 99-3471 (La.10/30/00), 769 So.2d 1206. While there is no justification for a rule that denies an |isaccused the opportunity to offer his own testimony, the accused’s right to testify is not unqualified and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. Id. Among those numerous state procedural and evidentiary rules which control the presentation of evidence and which do not offend the defendant’s right to testify are rules governing the orderly conduct of trial. Id. Louisiana limits testimony to the evidence-taking stage of trial. LSA-C.Cr.P. art. 765(5); State v. Dauzart, supra.
In State v. Hampton, 2000-0522 (La.3/22/02), 818 So.2d 720, on reh’g, (La.6/7/02), citing Passos-Paternina v. United States, 12 F.Supp.2d 231 (D.P.R.1998), the Louisiana Supreme Court set forth the following guidelines to be utilized by the courts in determining whether a criminal defendant’s right to testify has been violated or waived by his silence during trial:
(1) absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant’s right to testify. The court should assume, that a criminal defendant, by not ‘attempting to take the stand,’ has knowingly and voluntarily waived his right;
(2) the court must consider whether the petitioner has waived his right to testify.... [The defendant can only] rebut that presumption ... by showing that his attorney caused him to forego his right to testify [ (a) by alleging specific facts, including an affidavit by the defendant’s trial counsel] from which the court could reasonably find that trial counsel ‘told [the defendant] that he was legally forbidden to testify or in some similar way compelled him to remain silent ... ’ [(b) by demonstrating from the record] that those ‘specific factual allegations would be credible[.]’
Id. at 729-30.
 114In the instant case, we have reviewed this record in its entirety and we find that the defendant’s right to present evidence in his defense was not violated. In lieu of a trial, both the defense and state agreed to stipulate to the evidence adduced at the hearing on the motion to suppress. Before accepting the stipulation, the trial court advised the defendant that he was entitled to either a jury or bench trial. The defendant unequivocally waived his right to a jury trial and the parties agreed that the case would be decided by the trial judge based on the facts and evidence adduced during the hearing on the motion to suppress. Defense counsel requested and was granted 45 days to submit additional evidence for the court’s review but failed to do so. Subsequently, other hearings were held, during which the defendant failed to submit any additional evidence. Only after the trial court stated that it was prepared to hand down a verdict did defense counsel request an opportunity to present additional information “in writing within ten days.” Accordingly, we find that the trial court did not abuse its *197 discretion in denying the defendant’s request to present additional evidence.
Further, based on this record, we find that the defendant was not denied the right to testify. Multiple hearings were conducted and at no time did either the defendant or his counsel indicate that the defendant wanted to testify. The comments made by defense counsel during the proceedings indicate that all parties, including the defendant, understood that the trial court would make a determination of the defendant’s guilt or innocence based on the testimony and other evidence submitted during the suppression hearing. As stated above, the record reveals that defense counsel was | ^provided with additional time to present evidence to the trial court on the defendant’s behalf, and at no time did defense counsel mention that the defendant wanted to testify. In fact, defense counsel stated that the additional information he sought to submit was “in writing.”
Additionally, the defendant was not denied his right to testify based on the factors set forth in State v. Hampton, supra. There were no “extraordinary circumstances” that should have alerted the trial court that the defendant and his trial attorney had a conflict. Therefore the trial court was not obligated to inquire into the defendant’s decision not to testify. Furthermore, the defendant has failed to provide any proof, specifically in the form of an affidavit from his trial attorney, that his trial attorney told him that he was “legally forbidden to testify or in some similar way compelled him to remain silent.” Id. at 729. This assignment lacks merit.
CONCLUSION
For the reasons set forth herein, we hereby affirm the defendant’s convictions and sentences.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED.

. In a separate matter, Docket No. 41,752, the defendant was charged with possession with intent to distribute Lortab, possession of Soma and speeding. Those charges were handled in a similar fashion as the instant matter; however, the defendant appealed this matter separately.

. At the time of the defendant’s arrest, Officer Vines was employed by the Winnfield City Police Department.

. The chief of police did not testify at the hearing.

. Other hearings were conducted on March 3 and April 25, 2011. The trial judge was ill at that time. Therefore, the Judge Pro Tempore elected not to make a determination of guilt, agreeing with the parties that the original judge should be the one to determine Hall's guilt.

. Subsequently, the defendant applied for post-conviction relief, arguing that his trial defense counsel had induced him to waive his right to trial. The defendant argued that his trial counsel had informed him that he (defense counsel) and the trial judge had reached a "bargain” whereby, if the defendant was found guilty of a lesser included offense to the charge of aggravated rape, he would be sentenced to no more than seven years in prison. The trial court denied the application for post-conviction relief. This Court granted the defendant’s writ application, finding that defense counsel had misrepresented to the defendant the consequences of the waiver of a jury trial; therefore, the waiver was not made knowingly and intelligently. See, State v. Owens, 596 So.2d 829 (La.App. 2d Cir.), writ denied, 600 So.2d 678 (La.1992).