NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 15-578 consolidated with CA 15-579

DARELL LAYNE CORMIER

VERSUS

TAMATHA LYNN BROUSSARD

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-576-10 C/W C-578-10
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery, Judges.

AFFIRMED.

**Jack Derrick Miller**
**Attorney at Law**
**Post Office Box 1650**
**Crowley, Louisiana 70526**
**(337) 788-0768**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Darell Layne Cormier**

**Diane Sorola**
**Attorney at Law**
**402 West Convent Street**
**Lafayette, Louisiana 70501**
**(337) 234-2355**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Tamatha Lynn Cormier, born Broussard**

**CONERY, Judge.**

Tamatha Lynn Broussard Cormier (Tamatha) appeals the trial court's Judgment of November 24, 2014, denying her Motion for Final Periodic Spousal Support. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Tamatha and Darell Layne Cormier (Darell) were married in 1993 and had two children, Paige born in 1995 and Tanner born in 1999. Both parties filed an action for divorce on July 7, 2010 and the cases were consolidated without objection. A judgment of divorce was granted on November 22, 2011.

Based on stipulations by the parties, the trial court signed a consent judgment on March 30, 2012. The pertinent parts of the March 30, 2012 Judgment are as follows. First, Darell was to pay child support in the amount of $1649.36 per month. Second, Darell was to provide health insurance to the two minor children and Tamatha. Third, Tamatha was to have exclusive use of the former family home and the 2007 GMC pickup truck until partition of the community was final. Fourth, Darell was required to pay, "the promissory note/mortgage relative to the former family home, the promissory note and insurance relative to the 2007 GMC pickup truck, the tractor note and discover credit card note. He will be granted reimbursement for payments relative to the home mortgage note and tractor note in accordance with Louisiana law."

Finally, in lieu of interim spousal support payments, Darell was allowed to make payments on the vehicle note and insurance totaling $841.20 per month on Tamatha's vehicle which would "terminate at her death, remarriage, order of court or operation of law, whichever occurs first." The record reflects there has been no final partition of the community assets.

On October 3, 2012, Tamatha filed a Rule for Final Periodic Spousal Support. On July 9, 2013 Darell filed a Motion to Decrease Child Support. On July 13, 2013 Tamatha filed a Motion for Past Due Child Support, Contempt, and Income Assignment Order. A hearing on all motions was held on September 19, 2014. On October 24, 2014, the trial court issued its reasons for ruling and signed a judgment on November 24, 2014.

The parties stipulated that Tamatha was free from fault in the breakup of the marriage, as memorialized in the trial court's November 24, 2014 judgment, but denied Tamatha's motion for final periodic spousal support.

The trial court's November 24, 2014 judgment ordered that Darell continue to pay the mortgage note on the former family home and the car insurance covering the vehicle in Tamatha's possession, preserving, however, any claims that Darell may have to reimbursement in a future community property settlement. The trial court reduced Darell's child support obligation to $1,298.18 beginning January 1, 2014, as one child had reached majority. The trial court also ruled on the other pending motions, which will not be discussed as they have no bearing on the issues on appeal.

Tamatha filed a motion for new trial, which was heard by the trial court on January 6, 2015. The trial court issued reasons for ruling denying the new trial on January 7, 2015. A judgment denying the motion for new trial was signed by the trial court on January 24, 2015 and did not change the substance of the trial court's original judgment of November 24, 2014. Tamatha now timely appeals.

## ASSIGNMENT OF ERROR

On appeal, Tamatha assigned only error, "The Trial Court Erred in Denying Appellant's Prayer for Final Periodic Spousal Support." Even though only the

issue of final periodic support was appealed, Tamatha went on to list and discuss

the following issues  bearing upon that decision in her brief before this court:

## ISSUES PRESENTED FOR REVIEW

1. Did The Trial Court Err In Concluding That Appellant Did Not Prove That She Is Physically Disabled Such That She Cannot Maintain Gainful Employment?

2. Did The Trial Court Err By Making A Mathematical Error When Computing Appellant's "Need" As Per LSA-C.C. Articles 111 And 112 And Which Resulted In The Trial Court Erroneously Concluding That Appellant Was Not In "Need" As Per The Applicable Statutes?

3. Did The Trial Court Err In Imputing Gross Income Instead Of Net Income When Determining The Earning Capacity Of Appellant?

4. Did The Trial Court Err in Failing to Include in Its Computation of Appellant's Need a Monthly Sum for Clothing?

5. Did The Trial Court Err In Failing To Include Appellant's Obligation To Pay One-Half (1/2) Of The Home Mortgage, Taxes And Insurance Thereon As Well As 100% Of The Cost Of Her Vehicle Insurance In Its Computation Of Appellant's Need?

## LAW AND DISCUSSION

### Standard of Review

In the case of *Miller v. Miller*, 13-1043, p.10 (La.App. 3 Cir. 4/2/14), 161

So.3d 690, 697, *writ denied*, 14-1067 (La. 10/31/14), 152 So.3d 154, a panel of this

circuit succinctly stated the applicable standard of appellate review:

> Appellate review of an award of final spousal support is a three-tiered process. *Baggett v. Baggett,* 96-453 (La.App. 3 Cir. 4/23/97), 693 So.2d 264. The first step of the process requires us to "determine whether the trial judge correctly applied the proper legal standard or standards." *Id.* at 266 (quoting *Davy v. Davy,* 469 So.2d 481, 482 (La.App. 3 Cir.1985)). Because this involves issues of law, we consider only whether the trial court applied the correct standards with no deference being given the trial court's determination. *Id.* Next, we review the trial court's findings of fact. *Id.* Findings of fact will not be reversed unless they are found to be manifestly erroneous in light of the entire record. *Id.* Lastly, we consider the propriety of the final spousal support award. "If it is within legal limits and based on facts supported by the record, we will not alter the amount of the award in

the absence of an abuse of the trial judge's great discretion to set such awards." *Id.* at 266-67.

### *Louisiana Civil Code Articles 111 and 112*

Louisiana Civil Code Articles 111 and 112 set forth the provisions of the civil code for courts to apply when deciding the issue of final periodic spousal support. Louisiana Code Article 111 provides in pertinent part, "In a proceeding for a divorce or thereafter, the court may award final periodic spousal support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage." As previously stated, the parties stipulated prior to trial that Tamatha was free from fault, within the meaning of La.Civ.Code art. 111.

Louisiana Civil Code Article 112 (A) provides that final periodic spousal support is determined based on "the ability of the other party to pay," in accordance with La.Civ.Code art. 112(C). Louisiana Civil Code art. 112(C) provides in pertinent part that:

(C.) The court shall consider all relevant factors in determining the amount and duration of final periodic spousal support, including:

(1) The income and means of the parties, including the liquidity of such means.
(2) The financial obligations of the parties.
(3) The earning capacity of the parties.
(4) The effect of custody of children upon a party's earning capacity.
(5) The time necessary for the claimant to acquire appropriate education, training, or employment.
(6) The health and age of the parties.
(7) The duration of the marriage.
(8) The tax consequences to either or both parties.

The award of final periodic spousal support "shall not exceed one-third of the obligor's net income." La.Civ.Code art. 112(D).

### Tamatha's Inability To Work

Tamatha claims the trial court erred when it found that she had failed to prove that she was physically disabled and unable to maintain gainful employment. The spouse seeking final periodic spousal support based on an inability to work "bears the burden of proving that disability by a preponderance of evidence." *Williams v. Williams*, 97-2245, p.7 (La.App. 4 Cir. 4/11/01), 803 So.2d 50,54. See also, *Rusk v. Rusk*, 12-176 (La.App. 3 Cir. 6/6/12), 102 So.3d 193.

Tamatha testified at trial that she graduated from high school in 1984 and worked at the Golden Corral until it closed in 1996. She began as a waitress, but was the manager of the restaurant at the time of its closure.

After the restaurant closed in 1996, the couple decided that Tamatha would stay home and raise their two children. The only other work done outside the home by Tamatha was in 2005, when she worked for approximately three months for Dr. Robert Hanks, a chiropractor. Tamatha testified that the work became too stressful and she resigned. Dr. Hanks testified on Tamatha's behalf, but stated that in 2005 when she was working, Tamatha was able to perform all the work assigned, which included the physical task of moving patients, and he did not observe that she had any physical limitations. There was no evidence that Tamatha had worked outside the home in the past ten years.

At the trial, Darell's counsel lodged a continuing objection to Tamatha's testimony claiming she had a significant physical disability. Tamatha failed to submit into evidence medical documentation, records, or testimony from any of her present or former treating physicians to support her claim of disability, despite having the burden of proof that she was unable to work. The trial court allowed

her testimony as evidence of her "state of mind" as to her abilities. Darell's counsel did not appeal the trial court's evidentiary rulings, hence we will not consider that issue on appeal.

Tamatha testified that she has heart problems, resulting in eight stints having been implanted, and has undergone multiple angiograms. Tamatha claimed that she has been diagnosed with polycystic kidney and liver disease, and has also undergone both upper and lower GI scopes. She claimed that she received blood transfusions during hospitalization. In addition, she claimed that she fatigues easily, has shortness of breath, insomnia, and bleeding hemorrhoids.

Further, Tamatha testified that she has required emergency room visits for her suspected heart problems. However, on cross-examination she admitted that in her deposition taken in 2012, she stated that she had not visited the emergency room for her "medical problems" since 2005. Tamatha also testified at trial that one of her physicians, Dr. Ieyoub, advised her that she could not work due to her heart and/or kidney problems. However, on cross examination, she admitted to testifying in her 2012 deposition that Dr. Ieyoub never told her either her heart and/or her kidney problems precluded her from working.

Tamatha also testified that she was presently taking a number of prescription medications, including "two blood pressure medicines, a cholesterol medicine, Protonix, aspirin and Plavix, a water pill." Although, her attorney argues on appeal that the prescription medications Tamatha testified she was presently taking served to corroborate her testimony about her medical conditions, the record contains no pharmacy records of the prescription medications. To the contrary, Tamatha's affidavit of income and expenses, admitted into evidence at

trial, showed no listing for prescription drugs, but only a $40.00 amount for over the counter drugs.

As to her "shortness of breath," the trial court noted that Tamatha's sister, Ms. Tabatha Benoit, was the only other witness testifying on her behalf besides Dr. Hanks. Counsel for Darell lodged a similar continuing objection to Ms. Benoit's expressing any medical opinion and again, that evidentiary issue is not before us on appeal. The trial court limited Ms. Benoit's testimony to her first hand observations concerning Tamatha's health. Ms. Benoit testified that she had observed Tamatha's shortness of breath and the swelling of her legs, which allegedly precluded Tamatha from standing for long periods of time. Ms. Benoit testified that in her estimation, Tamatha's ability to shop and "do for herself" had decreased over the past two years.

The trial court found that Tamatha failed to carry her burden of proof that she was physically unable to work. The trial court summarized its findings in its October 22, 2014 reasons for ruling:

> TAMATHA also testified at trial that she was unable to work because of her medical problems and that she had been living off of the child support payment that DARELL was paying. DARELL was also responsible for the house mortgage note and her vehicle insurance. However, at trial, the only testimony put forward on the subject of TAMATHA's health problems was her own testimony and that of her sister. Dr. Robert Hanks, TAMATHA's last employer from 2005, testified that he never saw any indication that she was unable to perform the work she was hired by him to do. There was no medical testimony at trial nor were there any doctor's reports introduced that would have reflected any type of disability on TAMATHA's part that would have prevented her from working. TAMATHA also admitted that neither her treating physician nor any other doctor had ever told her that she was disabled. She also had never applied for or received any type of disability payment. While the Court does not doubt that TAMATHA suffers from health issues, there has been no evidence presented that she cannot work in a job that does not require physical labor.

7

Tamatha's counsel argues that the case of *Rusk*, 108 So.3d 193.*, supports the position that Tamatha's testimony alone is sufficient to carry the burden of proof that Tamatha is unable to work. To the contrary, the panel in *Rusk* cited *Williams*, 803 So.2d 54, a case with similar facts to this case, wherein it was stated:

> Mr. Williams asserts that the evidence presented by Mrs. Williams was insufficient to prove that she is unable to work at any kind of job. First, Mr. Williams argues that Mrs. Williams own testimony, without corroborating medical evidence, is insufficient to prove that she is medically unable to work. We agree. A spouse claiming the inability to work for the purpose of computing alimony bears the burden of proving that disability by a preponderance of the evidence. *It is axiomatic that a person's own self-serving testimony regarding his or her inability to work is insufficient proof of the inability.* In a situation such as the one presented by the instant case, the spouse claiming such an inability to work must present some type of corroborating evidence of the claimed disability, such as doctor's reports or testimony. Except perhaps in a case where the spouse's obvious mental or physical disability renders that spouse impaired, a trial court abuses its discretion in finding that a spouse is unable to work on the basis of that spouse's own self-serving testimony alone.

(Emphasis ours.)

In the *Rusk* case, the trial court found that documentation from the "Teacher's Retirement System" that Ms. Rusk was receiving disability retirement, and a "Physician Report of Disability Condition," that indicated she suffered from several medical problems, including "fibromyalgia, cervical spondylosis, and depression," was sufficient corroboration. *Rusk*, 102 So.3d at 201. Mr. Rusk objected to the documentation, and the trial court left the record open for him to depose Ms. Rusk's doctors. Mr. Rusk chose not to do so, leaving Ms. Rusk's medical documentation unrefuted. The court in *Rusk* went on to state, "Even assuming that the trial court erroneously admitted the form from Ms. Rusk's physician and the letter from Teachers' Retirement System, there was sufficient

other evidence in the record to support a conclusion that Ms. Rusk is disabled and unable to work." *Rusk*, 102 So.3d at 201.

Ms. Rusk's testimony concerning her "physical abilities" was unrefuted at trial. *Id.* Ms. Rusk also offered the testimony of three additional witnesses who testified "that Ms. Rusk was often in pain and that she had problems with her joints as a result of her medical condition." *Id.* The *Rusk* panel, citing "the trial court's responsibility as the finder of fact to make credibility determinations," affirmed the trial court's ruling that Ms. Rusk was unable to work. *Id.* at 202.

We likewise find, as did the panel in *Rusk*, that it is within the province of the trial court to make credibility determinations based on the testimony given by Tamatha and the lack of documentary evidence submitted into the record in support of that testimony. Therefore, we find that the trial court was not manifestly erroneous in its finding that Tamatha was able to work "in a job that does not require physical labor."

### *Minimum Wage Employment And Mathematical Calculations*

Having determined that Tamatha was capable of working, the trial court found that she was able to hold a minimum wage employment job which did not require physical labor. In *Williams,* the following factors were cited as a basis for the determination of income that must be imputed to a spouse who is unable to prove inability to work:

> If a non-working spouse claiming alimony fails to meet the burden of proof relating to his or her inability to work, the trial court deciding an alimony dispute must impute some income to that spouse. In determining the amount of income to impute to such a non-working spouse claiming alimony, the trial court should consider that spouse's employment history, physical and mental health, age, and education. La. C.C. art. 112.

9

*Williams*, 803 So.2d at 54.

Considering Tamatha's education, which included two semesters of college, her former employment in management, and her brief office work for Dr. Hanks in 2005, we find no manifest error in the trial court's determination that she could engage in light duty minimum wage employment that did not require heavy to moderate physical labor.

### Tamatha's Affidavit of Monthly Expenses

A panel of this circuit in *Rusk* discussed the application of La.Civ.Code art. 112 when deciding the issue of final periodic spousal support :

> The award for final periodic spousal support is governed by La. C.C. art. 112, which requires the court to consider all relevant factors. The nine specific factors listed in C.C. art. 112 are not exclusive. Article 112 also limits the amount to not exceed one-third of the obligor's net income. The trial court is vested with great discretion in making post-divorce alimony determinations, and its judgment will not be disturbed absent a manifest abuse of discretion. *Roan v. Roan*, 38,383 (La.App.2 Cir. 4/14/04), 870 So.2d 626.

> The earning capacities of the parties, their age, and the duration of the marriage are relevant factors listed in La. C.C. art. 112. The relative financial positions of the parties and the standard of living during the marriage are not listed in C.C. art. 112 but can be relevant factors. As stated above, all relevant factors are to be considered and the court is not limited to those specifically listed in the code article. *Knowles v. Knowles,* 02-331 (La.App. 3 Cir. 10/2/02), 827 So.2d 642.

> *Gremillion v. Gremillion*, 39,588, pp.14-15(La.App. 2 Cir. 4/6/05), 900 So.2d 262, 271

> Accordingly, as the language of Article 112(B) is permissive and not mandatory, the trial court is not required to consider all of the factors listed therein. *Prestenback v. Prestenback,* 08-457 (La.App. 1 Cir. 11/18/08), 9 So.3d 172.

*Rusk*, 102 So.3d at 202-203.

In its original reasons for ruling, the trial court found that Tamatha was not entitled to an award for final periodic spousal support. The trial court's judgment

denying Tamatha's request for final periodic spousal support was based on its determination that Tamatha's monthly needs were $1,260.13, and the gross amount she could earn at a minimum wage was roughly the same, $1,256.67, hence need had not been established.

*New Trial*

Tamatha filed a timely motion for new trial. A hearing was held on Tamatha's motion, after which the trial court issued its reasons for ruling. In its reasons for ruling denying Tamatha's motion for new trial, the trial court stated:

> After reviewing the original written reasons for ruling, the Court finds that there was indeed a mathematical error when it calculated BROUSSARD'S needs. The Court therefore will clarify its reasons for ruling and amend it to reflect the correct amount of BROUSSARD'S needs as **$1,440.13** which is a difference of $180.00. However, even if the Court's original calculation had been accurate, it would have not changed the decision regarding spousal support. When the Court calculated the needs of BROUSSARD, it did not allocate a portion of those needs to the minor child for whom CORMIER was already paying child support nor did the Court allocate any portion of those needs to the adult child who was living at home and not contributing to the needs of the household.

*Gross v. Net Earnings*

The trial court then addressed Tamatha's argument in her motion for new trial involving "the tax consequences of BROUSSARD earning minimum wage. The trial court found that "BROUSSARD has offered no new evidence that wasn't available at trial to support those claims."

The trial court had originally based its calculation of Tamatha's potential earnings on the gross amount of minimum wage earnings, as opposed to the net amount of minimum wage earnings. The gross amount of minimum wage earnings as found by the trial court was $1,256.67 per month. In Darell's brief on appeal, counsel agreed "that the net income would be the desired standard for the court to

utilize," but argued that Tamatha should have been prepared to argue the net versus gross income issue at trial. Instead, Tamatha asked the trial court to take judicial notice of the deductions for Social Security, Medicare and State taxes at the hearing on her motion for new trial.

Both the jurisprudence and the civil code require the use of net income in a determination of final periodic spousal support. As to the spouse obligated to make the payment, La.Civ.Code art. 112(D), provides in pertinent part, that "the sum awarded may not exceed one-third of the obligor's net income." In *Noto v. Noto*, 09-1100, (La.App. 5 Cir. 5/11/10), 41 So.3d 1175, 1181, the court discussed the calculation of the payee spouse's "monthly net income and her monthly net expenses." Therefore, at the time the November 24, 2014 judgment was issued denying Tamatha final periodic spousal support, the calculation of the trial court of the gross amount of wages Tamatha could earn at minimum wage employment was an error.

### Calculation of Final Periodic Spousal Support

In its reasons for ruling on the motion for new trial, the trial court corrected its mathematical calculation error, and found Tamatha's monthly needs were $1,440.13. Tamatha's needs then exceeded her imputed gross income by $180.00 per month making her theoretically eligible for final periodic spousal support.

We have determined that the trial court also erred in imputing to Tamatha a gross minimum wage income instead of the required net minimum wage income. Had the trial court taken judicial notice of the tax code, arguably $123.00 would be deducted for Social Security and Medicare, and $23.55 in State taxes for a net imputed minimum wage income of $1,107.12, instead of the gross minimum wage of $1,256.67 imputed by the trial court. Arguably, Tamatha's needs should be

12

increased to $1,440.13 and her means decreased to $1,107.12, making her eligible to receive $330.01 in final periodic spousal support.

However, the trial judge noted there was no evidence presented on this issue. Since there was no evidence offered in the record either at trial or in the motion for new trial on this issue, we find that the trial court was not manifestly erroneous in denying the motion for new trial on the grounds of mathematical miscalculations and the failure to include net versus gross income to Tamatha when calculating her means.

Moreover, the trial court succinctly stated in denying the motion for new trial that the alleged shortfall between Tamatha's corrected needs and corrected imputed income would be more than offset by an adjustment of the needs of Tamatha when taking into account a proper allocation of the needs of the minor child, for whom Darell was already ordered to pay $1,298.18 in child support, and the needs of the adult child "who was living at home and not contributing to the needs of the household." We find that under the circumstances of this case, the trial court's decision was not manifestly erroneous.

### Clothing Allowance

The trial court's November 24, 2014 judgment is silent on the issue raised by Tamatha of the trial court's denial of her monthly expenses of $100.00 for a clothing allowance. "Generally, when a trial court judgment is silent as to a claim or demand, it is presumed the relief sought was denied." *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p.12(La.7/1/08), 998 So.2d 16, 26. Therefore, it is presumed that the trial court denied Tamatha's request for a $100.00 monthly clothing allowance, as it is not included in the trial court's calculation of her

13

monthly needs in its original reasons for ruling or its reasons denying Tamatha's motion for new trial.

As previously stated, "Findings of fact will not be reversed unless they are found to be manifestly erroneous in light of the entire record." *Davy*, 469 So.2d at 482. The trial court's findings in its reasons for ruling in this case, do "not form part of the official judgment and will not be reviewed by this Court for correctness." *Noto*, 41 So.3d at 1181. Here, we find that the failure to include a $100.00 monthly clothing allowance was within the trial court's discretion and was not manifestly erroneous.

### *Automobile Insurance and Home Mortgage Payments*

Tamatha argues that the trial court also failed to include in its computation of her monthly needs the obligation contained in the consent judgment of March 30, 2012 to reimburse Darell upon settlement of the community for his payment of the home mortgage, which includes the taxes and insurance premiums on the family home, plus Tamatha's car insurance payments.

The trial court's judgment requires Darell to, "continue to pay the mortgage note on the former family home and the car insurance covering the vehicle in TAMATHA'S possession until further orders of the Court preserving, however, any claims that DARELL LAYNE CORMIER may have to reimbursement in the future as dictated in the consent judgment signed on March 30, 2012."

Counsel for Tamatha argues that her client's equity in the home is diminishing monthly, as upon partition of the community, she will theoretically be required to reimburse Darell for one-half of the amounts he has paid for the mortgage on the house, and for her car insurance premiums. However, Darell's payment of the community debt on the house and his order to continue to pay

vehicle insurance premiums for Tamatha was the subject of an earlier stipulation between the parties which had been reduced to a court judgment. The trial court had the authority to order those payments by Darell to continue, subject to possible reimbursement in a final community property partition.

At this juncture in the proceedings, Tamatha does not owe any reimbursement to Darell. Until the community property is partitioned, this issue is not ripe for a determination of what amount, if any, Tamatha will be required to reimburse to Darell, and how, if at all, any reimbursement will affect Tamatha's needs.[1]

## CONCLUSION

For the foregoing reasons, the trial court's November 24, 2014 Judgment denying final periodic spousal support to Tamatha Lynn Broussard Cormier is affirmed. All costs of this appeal are assessed to Tamatha Lynn Broussard Cormier.

**AFFIRMED.**

**This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules— Courts of Appeal, Rule 2–16.3.**

---

[1] Louisiana Civil Code Article 114 allows for the modification of an award of final periodic spousal support and provides in pertinent part, "an award of periodic support may be modified if the circumstances of either party materially change…."